MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X
RAFAEL MALDONADO ROSETE, ELIGIO
CANDIDO, CARLOS SALDAÑA
VILLANUEVA, and VENANCIO SALDAÑA
VILLANUEVA, *individually and on behalf of*
*others similarly situated,*

**COMPLAINT**

*Plaintiffs*,

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

-against-

AANGAN OF INDIA LLC (D/B/A
AANGAN), ROYAL KABAB AND CURRY,
INC.  (D/B/A AANGAN), RYM FOODS LLC
(D/B/A AANGAN), AARON 31 LLC (D/B/A
AANGAN), NITU SINGH, DOLLY SINGH,
ASHISH BAWA, and DICOSTA DOE,

*Defendants.*

------------------------------------------------------X

Plaintiffs Rafael Maldonado Rosete, Eligio Candido, Carlos Saldaña Villanueva, and

Venancio Saldaña Villanueva , individually and on behalf of others similarly situated (collectively,

"Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their

knowledge and belief, and as against Aangan of India LLC (d/b/a Aangan), Royal Kabab and

Curry, Inc. (d/b/a Aangan), Rym Foods LLC (d/b/a Aangan), Aaron 31 LLC (d/b/a Aangan),

("Defendant Corporations"), Nitu Singh,  Dolly Singh,  Ashish Bawa, and  Dicosta Doe,

("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Aangan of India LLC (d/b/a Aangan), Royal Kabab and Curry, Inc. (d/b/a Aangan), Rym Foods LLC (d/b/a Aangan), Aaron 31 LLC (d/b/a Aangan), Nitu Singh, Dolly Singh, Ashish Bawa, and Dicosta Doe.

2.       Defendants own, operate, or control an Indian restaurant, located at 2701 Broadway, New York, NY 10025 under the name "Aangan".

3.      Upon information and belief, individual Defendants Nitu Singh, Dolly Singh, Ashish Bawa, and Dicosta Doe, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurants as a joint or unified enterprise.

4.      Plaintiffs were employed as delivery workers, a dishwasher, a porter and a food preparer at the restaurant located at 2701 Broadway, New York, NY 10025.

5.      Plaintiff's Maldonado, Candido and Villanueva were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to packing orders, receiving shipments, stocking inventory such as sodas, bringing up inventory, sweeping and mopping the floors, washing the kitchen, answering the phone, preparing food, preparing salsas and making desserts (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

10.     Defendants employed and accounted for Plaintiff's Maldonado, Candido and Villanueva as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.     Regardless, at all relevant times, Defendants paid these Plaintiff's at a rate that was lower than the required tip-credit rate.

12.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because these Plaintiff's non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

13.     Upon information and belief, Defendants employed the policy and practice of disguising these Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of as non-tipped employees. This allowed Defendants to avoid paying Plaintiff's Candido and Villanueva at the minimum wage rate and enabled them to pay them at the tip-credit rate (which they still failed to do).

14.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

15.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

16.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

17.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

18.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

20.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants

operate an Indian restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

21.     Plaintiff Rafael Maldonado Rosete ("Plaintiff Maldonado" or "Mr. Maldonado") is an adult individual residing in New York County, New York.

22.     Plaintiff Maldonado was employed by Defendants at Aangan from approximately June 2019 until on or about October 10, 2020.

23.     Plaintiff Eligio Candido ("Plaintiff Candido" or "Mr. Candido") is an adult individual residing in New York County, New York.

24.     Plaintiff Candido was employed by Defendants at Aangan from approximately March 2014 until on or about October 11, 2020.

25.     Plaintiff Carlos Saldaña Villanueva ("Plaintiff Saldaña" or "Mr. Saldaña") is an adult individual residing in New York County, New York.

26.     Plaintiff Saldaña was employed by Defendants at Aangan from approximately December 2019 until on or about October 3, 2020.

27.     Plaintiff Venancio Saldaña Villanueva ("Plaintiff Villanueva" or "Mr. Villanueva") is an adult individual residing in New York County, New York.

28.     Plaintiff Villanueva was employed by Defendants at Aangan from approximately August 2015 until on or about October 11, 2020.

### *Defendants*

29.     At all relevant times, Defendants owned, operated, or controlled an Indian restaurant, located at 2701 Broadway, New York, NY 10025 under the name "Aangan".

30.     Upon information and belief, Aangan of India LLC (d/b/a Aangan) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 2701 Broadway, New York, NY 10025.

31.     Upon information and belief, Royal Kabab and Curry, Inc. (d/b/a Aangan) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 2701 Broadway, New York, NY 10025.

32.     Upon information and belief, Rym Foods LLC (d/b/a Aangan) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 2701 Broadway, New York, NY 10025.

33.     Upon information and belief, Aaron 31 LLC (d/b/a Aangan) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 2701 Broadway, New York, NY 10025.

34.     Defendant Nitu Singh is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Nitu Singh is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Nitu Singh possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

35.     Defendant Dolly Singh is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Dolly Singh is sued individually in her capacity as owner, officer and/or agent of Defendant Corporations. Defendant Dolly Singh

possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

36.     Defendant Ashish Bawa is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Ashish Bawa is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Ashish Bawa possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

37.     Defendant Dicosta Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Dicosta Doe is sued individually in his capacity as a manager of Defendant Corporations. Defendant Dicosta Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

38.     Defendants operate an Indian restaurant located in the Bloomingdale neighborhood in Manhattan.

39.     Individual Defendants, Nitu Singh, Dolly Singh, Ashish Bawa, and Dicosta Doe, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, or control significant functions of Defendant Corporations.

40.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

41.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

42.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

43.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

44.     Upon information and belief, Individual Defendants Nitu Singh, Dolly Singh, and Ashish Bawa operate Defendant Corporations as either alter egos of themselves and/or failed to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

> a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b) defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporations for their own benefit as the sole or majority shareholders,

e) operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

f) intermingling assets and debts of their own with Defendant Corporations,

g) diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

45. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

46. In each year from 2014 to 2020, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

47. In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurants on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

48.    Plaintiffs are former employees of Defendants who were employed as delivery workers, a dishwasher, a porter and a food preparer and ostensibly as delivery workers. However, the delivery worker spent over 20% of each shift performing the non-tipped duties described above.

49.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Rafael Maldonado Rosete*

50.    Plaintiff Maldonado was employed by Defendants from approximately June 2019 until on or about October 10, 2020.

51.    Defendants ostensibly employed Plaintiff Maldonado as a delivery worker.

52.    However, Plaintiff Maldonado was also required to spend a significant portion of his work day performing the non-tipped duties described above.

53.    Although Plaintiff Maldonado ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

54.    Plaintiff Maldonado regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

55.    Plaintiff Maldonado's work duties required neither discretion nor independent judgment.

56.    From approximately June 2019 until on or about October 10, 2020, Plaintiff Maldonado worked from approximately 5:00 p.m. until on or about 10:30 p.m., 7 days a week (typically 38.5 hours per week).

57.     For approximately once a month, Plaintiff Maldonado worked from approximately 12:00 p.m. until on or about 10:30 p.m., 1 day a week and from approximately 5:00 p.m. until on or about 10:30 p.m. 6 days a week (typically 43.5 hours per week).

58.     Throughout his employment, Defendants paid Plaintiff Maldonado his wages in cash.

59.     From approximately June 2019 until on or about February 2020, Defendants paid Plaintiff Maldonado a fixed salary of $200 per week.

60.     From approximately February 2020 until on or about October 10, 2020 and for approximately one week on January 10, 2020, Defendants did not pay Plaintiff Maldonado any wages for his work.

61.     Plaintiff Maldonado's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

62.     For example, Defendants required Plaintiff Maldonado to start working 5 hours prior his scheduled start time once a month, and did not pay him for the additional time he worked.

63.     Defendants never granted Plaintiff Maldonado any breaks or meal periods of any kind.

64.     Plaintiff Maldonado was never notified by Defendants that his tips were being included as an offset for wages.

65.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Maldonado's wages.

66.     Defendants withheld a portion of Plaintiff Maldonado's tips; specifically, Defendants withheld a considerable portion of the tips customers paid through Seamles;  for example on November 26th they withheld $173, on December 7th they withheld $92.19, on December 13th they withheld $75, and on January 21st they withheld $80.

67.     Plaintiff Maldonado was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

68.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Maldonado regarding overtime and wages under the FLSA and NYLL.

69.     Defendants did not provide Plaintiff Maldonado an accurate statement of wages, as required by NYLL 195(3).

70.     Defendants did not give any notice to Plaintiff Maldonado, in English and in Spanish (Plaintiff Maldonado's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

71.     Defendants required Plaintiff Maldonado to purchase "tools of the trade" with his own funds—including an electric bicycle, a bicycle cover, a helmet, a delivery bookbag, and monthly maintenance.

*Plaintiff Eligio Candido*

72.     Plaintiff Candido was employed by Defendants from approximately March 2014 until on or about October 11, 2020.

73.     Defendants ostensibly employed Plaintiff Candido as a delivery worker.

74.     However, Plaintiff Candido was also required to spend a significant portion of his work day performing the non-tipped duties described above.

75.     Although Plaintiff Candido ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

76.     Plaintiff Candido regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

77.     Plaintiff Candido's work duties required neither discretion nor independent judgment.

78.     From approximately November 2014 until on or about March 2015, Plaintiff Candido worked from approximately 11:30 a.m. until on or about 11:00 p.m., Thursdays through Tuesdays (typically 69 hours per week).

79.     From approximately March 2015 until on or about October 11, 2020, Plaintiff Candido worked from approximately 4:30 p.m. until on or about 11:00 p.m., Thursdays through Tuesdays (typically 39 hours per week).

80.     Throughout his employment, Defendants paid Plaintiff Candido his wages in cash.

81.     From approximately November 2014 until on or about March 2015, Defendants paid Plaintiff Candido a fixed salary of $180 per week.

82.     From approximately March 2015 until on or about October 2018, Defendants paid Plaintiff Candido a fixed salary of $90 per week.

83.     From approximately October 2018 until on or about March 2020, Defendants paid Plaintiff Candido a fixed salary of $180 per week.

84.     From approximately March 2020 until on or about October 11, 2020, Defendants did not pay Plaintiff Candido any wages for his work.

85.     Plaintiff Candido's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

86.     For example, Defendants required Plaintiff Candido to start working 30 minutes prior to his scheduled start time every day, and did not pay him for the additional time he worked.

87.     From approximately March 2015 until on or about October 11, 2020, Defendants never granted Plaintiff Candido any breaks or meal periods of any kind.

88.    Plaintiff Candido was never notified by Defendants that his tips were being included as an offset for wages.

89.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Candido's wages.

90.    Defendants withheld a portion of Plaintiff Candido's tips; specifically, Defendants withheld  portion of all the cash tips customers left for Plaintiff Candido ($50 to $60 per week).

91.    In addition, Plaintiff Candido constantly had to complain and remind Defendants to give him his tips from Seamless to receive them.

92.    From approximately October 2018 until on or about October 11, 2020, Plaintiff Candido was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

93.    From approximately November 2014 until on or about October 2018, Defendants required Plaintiff Candido to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

94.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Candido regarding overtime and wages under the FLSA and NYLL.

95.    Defendants did not provide Plaintiff Candido an accurate statement of wages, as required by NYLL 195(3).

96.    Defendants did not give any notice to Plaintiff Candido, in English and in Spanish (Plaintiff Candido's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

97.    Defendants required Plaintiff Candido to purchase "tools of the trade" with his own funds—including one bicycle, two electric bicycles, a helmet, a backpack and bicycle maintenance.

*Plaintiff Carlos Saldaña Villanueva*

98.    Plaintiff Saldaña was employed by Defendants from approximately December 2019 until on or about October 3, 2020.

99.    Defendants employed Plaintiff Saldaña as a dishwasher, a porter and a food preparer.

100.    Plaintiff Saldaña regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

101.    Plaintiff Saldaña's work duties required neither discretion nor independent judgment.

102.    Throughout his employment with Defendants, Plaintiff Saldaña regularly worked in excess of 40 hours per week.

103.    From approximately December 2019 until on or about March 2020, Plaintiff Saldaña worked from approximately 10:00 a.m. until on or about 10:00 p.m., 6 days per week (typically 72 hours per week).

104.    From approximately March 2020 until on or about October 3, 2020, Plaintiff Saldaña worked from approximately 10:00 a.m. until on or about 11:20 p.m., 6 days per week (typically 79.98 hours per week).

105.    From approximately December 2019 until on or about March 2020, Defendants paid Plaintiff Saldaña his wages in cash.

106.    From approximately March 2020 until on or about October 3, 2020, Defendants paid Plaintiff Saldaña his wages by personal checks written out to his brother Venancio Saldaña Villanueva.

107.    From approximately December 2019 until on or about October 3, 2020, Defendants paid Plaintiff Saldaña a fixed salary of $500 per week.

108.   For approximately one week, Defendants did not pay Plaintiff Saldaña any wages for his work.

109.   Plaintiff Saldaña's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

110.   For example, Defendants required Plaintiff Saldaña to work an additional 1 hour and 20 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

111.   Defendants never granted Plaintiff Saldaña any breaks or meal periods of any kind.

112.   Plaintiff Saldaña was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

113.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Saldaña regarding overtime and wages under the FLSA and NYLL.

114.   Defendants did not provide Plaintiff Saldaña an accurate statement of wages, as required by NYLL 195(3).

115.   Defendants did not give any notice to Plaintiff Saldaña, in English and in Spanish (Plaintiff Saldaña's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Venancio Saldaña Villanueva*

116.   Plaintiff Villanueva was employed by Defendants from approximately August 2015 until on or about October 11, 2020.

117.   Defendants ostensibly employed Plaintiff Villanueva as a delivery worker.

118.     However, Plaintiff Villanueva was also required to spend a significant portion of his work day performing the non-tipped duties described above.

119.     Although Plaintiff Villanueva ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

120.     Plaintiff Villanueva regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

121.     Plaintiff Villanueva's work duties required neither discretion nor independent judgment.

122.     From approximately August 2015 until on or about November 2019, Plaintiff Villanueva worked from approximately 5:00 p.m. until on or about 10:45 p.m., 6 days a week (typically 34.5 hours per week).

123.     From approximately December 2019 until on or about October 11, 2020, Plaintiff Villanueva worked from approximately 10:00 a.m. until on or about 10:45 p.m., 7 days a week (typically 89.25 hours per week).

124.     Throughout his employment, Defendants paid Plaintiff Villanueva his wages in a combination of check and cash.

125.     From approximately August 2015 until on or about December 2019, Defendants paid Plaintiff Villanueva a fixed salary of $160 per week.

126.     From approximately December 2019 until on or about February 20, 2020, Defendants paid Plaintiff Villanueva a fixed salary of $410 per week.

127.     From approximately February 21, 2020 until on or about October 11, 2020, Defendants did not pay Plaintiff Villanueva any wages for his work.

128.    Plaintiff Villanueva's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

129.    For example, Defendants required Plaintiff Villanueva to work an additional 20 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

130.    Defendants never granted Plaintiff Villanueva any breaks or meal periods of any kind.

131.    Plaintiff Villanueva was never notified by Defendants that his tips were being included as an offset for wages.

132.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Villanueva's wages.

133.    Defendants withheld a portion of Plaintiff Villanueva's tips; specifically, Defendants withheld a considerable part of all the credit card and Seamless web tips.

134.    Plaintiff Villanueva was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

135.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Villanueva regarding overtime and wages under the FLSA and NYLL.

136.    Defendants did not provide Plaintiff Villanueva an accurate statement of wages, as required by NYLL 195(3).

137.    Defendants did not give any notice to Plaintiff Villanueva, in English and in Spanish (Plaintiff Villanueva's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

138.    Defendants required Plaintiff Villanueva to purchase "tools of the trade" with his own funds—including an electric bicycle, two delivery bookbags, a helmet, a vest and bicycle maintenance.

*Defendants' General Employment Practices*

139.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

140.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

141.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

142.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

143.    Defendants required Plaintiff's Maldonado, Candido and Villanueva and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

These Plaintiff's and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

144.    These Plaintiff's duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

These Plaintiff's and all other tipped workers were paid at a rate that was lower than the lower tip-credit rate by Defendants.

145.    However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiff's non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

146.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

147.    In violation of federal and state law as codified above, Defendants classified Plaintiff's Maldonado, Candido and Villanueva and other tipped workers as tipped employees, and paid them at a rate that was lower than the lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

148.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

149.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

150.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received.

151.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

152.    Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

153.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

154.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

155.    On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

156.    Defendants paid Plaintiffs their wages in cash or by personal checks.

157.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

158.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

159.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

160.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

161.     Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

162.     Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

163.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

164.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

165.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

166.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

167.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

168.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

169.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

170.     Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

171.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

172.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

173.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

174.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

175.     Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

176.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

177.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

178.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs,

controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

179.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

180.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

181.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

182.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

183.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

184.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

185.    Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

186.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

187.     Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

188.     Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

189.     Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

190.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

191.     Defendants failed to provide Plaintiffs with a written notice, in English and in a native language and Spanish  (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

192.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

193.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

194.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

195.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

196.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

197.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

198.     Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

## OF THE NEW YORK LABOR LAW

199.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

200.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

201.     New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

202.     Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers.

203.     Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

## VIOLATION OF THE TIMELY PAYMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

204.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

205.     Defendants did not pay Plaintiffs  on a regular weekly basis, in violation of NYLL §191.

206.     Defendants are liable to each Plaintiff in an amount to be determined at trial.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)    Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)    Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)     Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(l)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)    Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

November 16, 2020

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:    _____ /s/ Michael Faillace _____
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

————

Faillace@employmentcompliance.com

October 6, 2020

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Rafael Maldonado Rosete

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    6 de Octubre de 2020

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 6, 2020

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:          Venancio Saldana Villanueva

Legal Representative / Abogado:          Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:          6 de Octubre de 2020

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 6, 2020

BY ELECTRONIC SIGNATURE

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la
demanda como uno de los demandantes.)**

Name / Nombre:                    Carlos Saldaña Villanueva

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     6 de Octubre de 2020

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 6, 2020

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Eligio Candido

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     6 de Octubre de 2020

*Certified as a minority-owned business in the State of New York*