UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAFAEL MALDONADO ROSETE, CARLOS SALDAÑA VILLANUEVA, and VENANCIO SALDAÑA VILLANUEVA, individually and on behalf of others similarly situated,<br><br>                    Plaintiffs,<br><br>        -v-<br><br>AANGAN OF INDIA LLC (D/B/A AANGAN), ROYAL KABAB AND CURRY, INC (D/B/A AANGAN), RYM FOODS LLC (D/B/A AANGAN), AARON 31 LLC, NITU SINGH, DOLLY SINGH, ASHISH BAWA, and DICOSTA DOE,<br><br>                    Defendants. | CIVIL ACTION NO. 20 Civ. 9598 (JGLC) (SLC)<br><br>**REPORT AND RECOMMENDATION** |

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE JESSICA G.L. CLARKE**, United States District Judge:

## I.INTRODUCTION

In this putative collective action filed under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., New York Labor Law ("NYLL") § 650 et seq., and New York's Wage Theft Prevention Act, NYLL § 195 ("WTPA"), Plaintiffs Rafael Maldonado Rosete ("Maldonado"), Carlos Saldaña Villanueva ("C. Saldaña"), and Venancio Saldaña Villanueva ("V. Saldaña," with Maldonado and C. Saldaña, "Plaintiffs"),[1] sought payment of unpaid wages and related relief

---

[1] On October 12, 2023, the claims of Plaintiff Eligio Candido ("Candido") were dismissed without prejudice for failure to prosecute.  (ECF No. 167).

from Defendants,[2] at whose Indian restaurant ("Aangan") Plaintiffs were employed. (ECF No. 1 (the "Complaint")). Plaintiffs allege that, during their employment as food service workers at Aangan, Defendants failed to pay them the minimum wage and overtime compensation required under the FLSA and NYLL. (Id. ¶¶ 4–18). After Defendants RKC, Rym, N. Singh, and Doe (the "Defaulting Defendants") failed to appear and defend in this action, the Clerk of the Court entered certificates of default and the Court entered default judgment as to them, and the matter was referred for an inquest on damages. (ECF Nos. 85–87; 92; 111; 132–33).[3] Separately, following months of settlement discussions, in December 2023, Plaintiffs accepted an offer of judgment from Defendants Aangan LLC, Aaron, and D. Singh (the "Settling Defendants"). (ECF No. 174 (the "Judgment")).[4]

Having now reviewed Plaintiffs' proposed findings of fact and conclusions of law (the "Proposed Findings"), declarations, damages calculation (the "Damages Chart"), and accompanying exhibits (ECF Nos. 160; 160-1—160-5 (the "Damages Submission")), I respectfully recommend that Plaintiffs be awarded a default judgment against the Defaulting Defendants as follows:

1. Maldonado be awarded:

   a. Compensatory damages in the amount of $34,884.46, consisting of $32,440.11 in Straight Time Wages, $234.35 in spread-of-hours wages, and $2,210.00 for tools of the trade purchases;

---

[2] "Defendants" refers to Aangan of India LLC ("Aangan LLC"), Royal Kebab and Curry, Inc. ("RKC"), Rym Foods LLC ("Rym"), Aaron 31 LLC ("Aaron"), Nitu Singh ("N. Singh"), Dolly Singh ("D. Singh"), Ashish Bawa ("Bawa"), and Dicosta Doe ("Doe"). (ECF No. 1 ¶¶ 30–37).

[3] As discussed further below, Plaintiffs have agreed to withdraw their claims against Bawa. (ECF No. 176). (See § II.B, infra).

[4] As discussed below (see § II.B, infra), the certificate of default and default judgment that were entered as to Aangan LLC (ECF Nos. 88; 131) should now be vacated given Aangan LLC's participation in the settlement with Plaintiffs and inclusion in the Judgment. (ECF No. 174).

    b.  Liquidated damages in the amount of $32,674.46;

    c.  Pre-judgment interest on Maldonado's Straight Time Wages ($32,440.11) and spread-of-hours wages ($234.35), together, $32,674.46, at a rate of nine percent per year from February 4, 2020 through the date of entry of judgment; and

    d.  Post-judgment interest pursuant to 28 U.S.C. § 1961.

2.  C. Saldaña be awarded:

    a.  Compensatory damages in the amount of $44,640.00, consisting of $14,725.00 in Straight Time Wages, $25,993.61 in overtime damages, and $3,921.39 in spread-of-hours damages;

    b.  Liquidated damages in the amount of $44,640.00;

    c.  Pre-judgment interest on his Straight Time Wages ($14,725.00), overtime damages ($25,993.61), and spread-of-hours damages ($3,921.39), together, $44,640.00, at a rate of nine percent per year from May 2, 2020 to the date of entry of judgment; and

    d.  Post-judgment interest pursuant to 28 U.S.C. § 1961.

3.  V. Saldaña be awarded:

    a.  Compensatory damages in the amount of $127,574.67, consisting of $74,031.90 in Straight Time Wages, $46,907.06 in overtime damages, $4,695.71 in spread-of-hours damages, and $1,940.00 for tools of the trade purchases;

    b.  Liquidated damages in the amount of $125,634.67;

    c.  Pre-judgment interest on his Straight Time Wages ($74,031.90), overtime damages ($46,907.06), and spread-of-hours damages ($4,695.71), together, $125,634.67, at a rate of nine percent per year from March 7, 2018 through the date of entry of judgment; and

    d.  Post-judgment interest pursuant to 28 U.S.C. § 1961.

4.  Plaintiffs be awarded attorneys' fees in the amount of $3,292.00.

5.  Plaintiffs be awarded costs in the amount of $2,367.60.

6.  Pursuant to NYLL § 198(4), an automatic increase of judgment be applied to damages awarded under the NYLL that remain unpaid upon the expiration of 90 days following

issuance of judgment, or 90 days after expiration of the time to appeal, and no appeal is then pending, whichever is later; and

7. Plaintiffs' claims for statutory damages under the WTPA be DISMISSED WITH PREJUDICE for lack of standing.

In addition, the Court respectfully recommends that the Clerk of the Court be directed to vacate the certificate of default (ECF No. 88) and default judgment (ECF No. 131) as to Aangan LLC, and that Plaintiffs' claims against Bawa be DISMISSED WITH PREJUDICE.

## II. BACKGROUND

### A. Factual Background

Unless otherwise indicated, the Court summarizes the facts from the Complaint and the Damages Submission, including the Proposed Findings (ECF No. 160), and the declarations each Plaintiff submitted attesting to his hours worked and other facts about his employment at Aangan (ECF No. 160-2 (the "Declarations")).  Given the Defaulting Defendants' default, the Court accepts as true all well-pleaded factual allegations against them in the Complaint, except as to damages. See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)); Whitehead v. Mix Unit, LLC, No. 17 Civ. 9476 (VSB) (JLC), 2019 WL 384446, at *1 (S.D.N.Y. Jan. 31, 2019).[5]

---

[5] Unless otherwise indicated, all internal citations and quotation marks are omitted from case citations.

### 1. Plaintiffs

#### a. Maldonado

Maldonado worked as a delivery driver at Aangan from June 2019 until October 2020. (ECF Nos. 1 ¶¶ 22, 50; 160 ¶¶ 7–8; 160-2 at 2 ¶ 9).  Throughout his employment, he regularly worked more than 40 hours per week.  (ECF Nos. 1 ¶ 57; 160-2 at 2–3 ¶¶ 14, 24).  He typically worked from 5:00 p.m. until 10:30 p.m., seven days per week (38.5 hours), and once per month, worked an extended shift from 12:00 p.m. until 10:30 p.m. on one of those days (for an alleged total of 43.5 hours).  (ECF Nos. 1 ¶¶ 56–57; 160 ¶¶ 11–12; 160-2 at 2 ¶¶ 13–14).[6]  From June 2019 until February 2020, the Defaulting Defendants paid Maldonado $200.00 in cash per week, but from February 2020 until October 10, 2020 and for the week of January 10, 2020, did not pay Maldonado any wages.  (ECF Nos. 1 ¶¶ 58–60; 160 ¶¶ 13–15; 160-2 at 2–3 ¶¶ 15–16).  His pay did not vary when he was required to stay later or work a longer day than his usual schedule, for example, on the days when the Defaulting Defendants required him to start working five hours before his scheduled start time once a month, without paying him for the additional hours he worked.  (ECF Nos. 1 ¶¶ 61–62; 160 ¶¶ 16–17; 160-2 at 3 ¶¶ 17–18).  Without giving him notice or an accounting, the Defaulting Defendants withheld a portion of his tips, especially from customers who paid through Seamless, including $173.00 they withheld on November 26, 2019, $92.19 on December 7, 2019, $75.00 on December 13, 2019, and $80.00 on January 21, 2020.  (ECF Nos. 1 ¶¶ 64–66; 160 ¶¶ 19–21; 160-2 at 3 ¶¶ 20–22).  The Defaulting Defendants did not

---

[6] As discussed below (see § III.C.7), the Damages Submission reflects that Maldonado did not in fact work more than 40 hours in any week.  (ECF No. 160-3 at 1).  The discrepancy in Plaintiffs' allegations appears to be due to counsel erroneously calculating Maldonado's hours as if he worked one extended shift per week, while the Complaint and Damages Submission state that Maldonado worked one extended shift per month.  (See ECF Nos. 1 ¶ 57; 160 ¶ 12).

afford Maldonado meal breaks, nor did they require him to keep track of his time or use a time tracking device.  (ECF Nos. 1 ¶¶ 63, 67; 160 ¶¶ 18, 22; 160-2 at 3 ¶¶ 19, 23).  The Defaulting Defendants did not pay Maldonado overtime, give him an accurate statement of wages, or provide information regarding minimum wage and overtime requirements.  (ECF Nos. 1 ¶¶ 68–70; 160 ¶¶ 23–25; 160-2 at 3–4 ¶¶ 24–27).  The Defaulting Defendants required Maldonado to purchase with his own funds "tools of the trade," including an electric bicycle, bicycle cover, helmet, delivery bag, and monthly maintenance.  (ECF Nos. 1 ¶ 71; 160 ¶ 26; 160-2 at 4 ¶ 28).

### b.  C. Saldaña

C. Saldaña worked at Aangan as a dishwasher, porter, and food preparer from December 2019 until October 3, 2020.  (ECF Nos. 1 ¶¶ 98–99; 160 ¶¶ 27–28; 160-2 at 6 ¶ 9).  He regularly worked more than 40 hours per week.  (ECF Nos. 1 ¶¶ 102–104; 160 ¶¶ 31–33; 160-2 at 6-7 ¶¶ 14–15, 24).  From December 2019 until March 2020, he worked from 10:00 a.m. until 10:00 p.m., six days per week (a total of 72 hours per week), and from March 2020 until October 3, 2020, he worked from 10:00 a.m. until 11:20 p.m., six days per week (a total of 79.98 hours per week).  (ECF Nos. 1 ¶¶ 103–104; 160 ¶¶ 32–33; 160-2 at 6 ¶¶ 14–15).  The Defaulting Defendants paid C. Saldaña $500.00 per week, from December 2019 to March 2020 in cash, and from March 2020 until October 3, 2020, by personal checks written to his brother, V. Saldaña. (ECF Nos. 1 ¶¶ 105–07; 160 ¶¶ 34–36; 160-2 at 7 ¶¶ 16–18).  The Defaulting Defendants failed to pay him any wages for one week of work, the dates of which he does not specify. (ECF Nos. 1 ¶ 108; 160 ¶ 37; 160-2 at 7 ¶ 19).  His pay did not vary when they required him to start earlier or work later, including the additional hour and 20 minutes they required him to stay late from March to October 2020.  (ECF Nos. 1 ¶¶ 109–10; 160 ¶¶ 38–39; 160-2 at 7 ¶¶ 20–21).

The Defaulting Defendants did not afford C. Saldaña meal breaks, nor did they require him to keep track of his time or use a time tracking device. (ECF Nos. 1 ¶¶ 111–12; 160 ¶¶ 40–41; 160-2 at 7 ¶¶ 22–23). The Defaulting Defendants did not pay him overtime, give him an accurate statement of wages, or provide information regarding minimum wage and overtime requirements. (ECF Nos. 1 ¶¶ 113–15; 160 ¶¶ 42–44; 160-2 at 7 ¶¶ 24–27).

### c.  V. Saldaña

V. Saldaña was employed as a delivery worker at Aangan from August 2015 until October 2020, but the Defaulting Defendants also required him to spend over 20% of each day performing non-tipped duties. (ECF Nos. 1 ¶¶ 116–19; 160 ¶¶ 45–47; 160-2 at 10 ¶¶ 9–10). From August 2015 until November 2019, he worked from 5:00 p.m. until 10:45 p.m., six days per week (a total of 34.5 hours per week), and from December 2019 until October 11, 2020, he worked more than 40 hours per week, from 10:00 a.m. until 10:45 p.m., seven days per week (a total of 89.25 hours per week). (ECF Nos. 1 ¶¶ 122–23; 160 ¶¶ 50–51; 160-2 at 10–11 ¶¶ 14–15). The Defaulting Defendants, in a combination of checks and cash, paid V. Saldaña $160.00 per week from August 2015 until December 2019, and from December 2019 until February 20, 2020, $410.00 per week, but from February 21, 2020 until October 11, 2020, they did not pay him any wages. (ECF Nos. 1 ¶¶ 124–27; 160 ¶¶ 52–55; 160-2 at 11 ¶¶ 16–19). His pay did not vary when he was required to start earlier or work later, such as the additional 20 minutes that they required him to work past his scheduled departure time. (ECF Nos. 1 ¶¶ 128–29; 160 ¶¶ 56–57; 160-2 at 11 ¶¶ 20–21). Without giving him notice or an accounting, the Defaulting Defendants withheld "a considerable part of all credit card and Seamless web tips." (ECF Nos. 1 ¶¶ 131–33; 160 ¶¶ 59–61; 160-2 at 11 ¶¶ 23–25). The Defaulting Defendants did not afford V. Saldaña meal breaks, nor did they

7

require him to keep track of his time or use a time tracking device. (ECF Nos. 1 ¶¶ 130, 134; 160 ¶¶ 58, 62; 160-2 at 11–12 ¶¶ 22, 26). The Defaulting Defendants did not pay him overtime, give him an accurate statement of wages, or provide information regarding minimum wage and overtime requirements. (ECF Nos. 1 ¶¶ 135–37; 160 ¶¶ 63–65; 160-2 at 12 ¶¶ 27–30, 32). The Defaulting Defendants required him to purchase with his own funds "tools of the trade," including an electric bicycle, two delivery bookbags, a helmet, a vest, and bicycle maintenance. (ECF Nos. 1 ¶ 138; 160 ¶ 66; 160-2 at 12 ¶ 31).

### 2. Defaulting Defendants

The Defaulting Defendants owned, operated, and controlled Aangan, an Indian restaurant located at 2701 Broadway in New York City. (ECF Nos. 1 ¶¶ 30–38; 160 ¶ 3; see ECF No. 160-2 at 1–2 ¶¶ 4–5, at 5–6 ¶¶ 4–5, & at 9–10 ¶¶ 4–5). At all relevant times, the Defaulting Defendants were Plaintiffs' employers within the meaning of the FLSA and NYLL. (ECF Nos. 1 ¶¶ 42, 45; 160 ¶ 4). From 2014 to 2020, the Defaulting Defendants had a gross annual volume of sales of not less than $500,000.00 (exclusive of retail excise taxes). (ECF Nos. 1 ¶ 46; 160 ¶ 5). The Defaulting Defendants' business engaged in interstate commerce by, for example, using items that were produced outside of New York at Aangan. (ECF Nos. 1 ¶ 47; 160 ¶ 6; 160-2 at 2 ¶ 11, 6 ¶ 11, 10 ¶ 12).

Throughout Plaintiffs' employment, the Defaulting Defendants maintained a policy and practice of requiring their employees, including Plaintiffs, to work more than 40 hours per week without paying them the appropriate minimum, spread of hours, and overtime wages. (ECF No. 1 ¶ 139). The Defaulting Defendants required delivery workers, including Maldonado and V. Saldaña, to perform non-tipped tasks, and paid them at a rate lower than the tip-credit

8

rate, even though the Defaulting Defendants were not entitled to a tip credit.  (ECF No. 1 ¶¶ 143–45).  The Defaulting Defendants also took deductions against tipped employees' wages without informing those employees that their tips were being credited toward the minimum wage or maintaining a record of tips for delivery workers who received tips.  (ECF No. 1 ¶¶ 148–50).  The Defaulting Defendants required Plaintiffs to sign documents the contents of which they were not allowed to review in detail, paid wages in cash or by personal check, and failed to post or provide Plaintiffs with notices of the applicable wage and hour requirements of the FLSA and NYLL.  (ECF No. 1 ¶¶ 155–57).

### B. <u>Procedural Background</u>

On November 16, 2020, Plaintiffs filed the Complaint, asserting FLSA minimum wage and overtime claims on behalf of themselves and a putative collective, and NYLL minimum wage, overtime, spread-of-hours, wage notice, and wage statement claims.  (ECF No. 1).  After Defendants were each served with the Summons and Complaint (ECF Nos. 22–29; 33), attorney Tejinder Singh Bains ("Bains") entered notices of appearance on behalf of Aangan LLC, Aaron, D. Singh, and Bawa.  (ECF Nos. 34; 36).  In compliance with a deadline set by the Honorable Alison J. Nathan, on April 22, 2021, Aangan LLC, Aaron, and Bawa, and separately, D. Singh, filed answers.  (ECF Nos. 37–39).  Judge Nathan subsequently entered a case management plan, which set a fact discovery deadline of September 9, 2021 and an expert discovery deadline of October 22, 2021.  (ECF No. 44 (the "CMP")).

On October 12, 2021, attorney Kuljit S. Ahluwalia ("Ahluwalia") substituted for Bains as counsel for Aaron, D. Singh, and Bawa, but not Aangan LCC, for whom Bains remained counsel of record.  (ECF Nos. 54; 65; <u>see</u> ECF No. 74).  After some, but not all, Defendants consented to

Magistrate Judge jurisdiction (ECF Nos. 67; 70), Judge Nathan referred the action to the undersigned for general pretrial supervision. (ECF No. 71). In a status letter filed on February 25, 2022, Plaintiffs advised that they intended to move for a default judgment as to RKC, Rym, and N. Singh, and that they were engaged in fact discovery and settlement negotiations with Aaron, D. Singh, and Bawa. (ECF No. 72). The Court directed the parties to file a proposed case management plan for the completion of discovery, directed Plaintiffs to request certificates of default as to RKC, Rym, N. Singh, and Doe, and ordered Aangan LLC to show cause why a certificate of default should not be entered based on its failure to continue to appear and defend in the action. (ECF Nos. 73; 74 (the "OTSC")). The Court also adopted the parties' revised proposed case management plan, setting, inter alia, a fact discovery deadline of June 3, 2022. (ECF No. 76 (the "Revised CMP")).

After Aangan LLC failed to respond to the OTSC, the Court directed Plaintiffs to request certificates of default as to Aangan LLC, RKC, Rym, N. Singh, and Doe. (ECF Nos. 73; 79). Plaintiffs requested certificates as to RKC, Rym, N. Singh, and Aangan LLC, but not Doe, (ECF Nos. 80–84), and on March 29, 2022, the Clerk of Court entered certificates of default as to Aangan LLC, RKC, Rym, and N. Singh. (ECF Nos. 85–88). On March 30, 2022, the Court directed Plaintiffs again to request a certificate of default as to Doe and, by April 15, 2022, file a motion for default judgment as to RKC, Rym, N. Singh, Aangan LLC, and Doe. (ECF No. 89). On April 4, 2022, at Plaintiffs' request (ECF Nos. 90–91), the Clerk of Court entered a certificate of default as to Doe. (ECF No. 92). On April 7, 2022, the action was reassigned to the Honorable Katherine Polk Failla. (ECF min. entry Apr. 7, 2022).

10

After requesting and receiving two extensions of time (ECF Nos. 93–94; 96–97), on May 8, 2022, Plaintiffs moved by order to show cause for a default judgment as to Aangan LLC, RKC, Rym, N. Singh, and Doe.  (ECF Nos. 98–101).  On May 11, 2022, Judge Failla ordered Aangan LLC, RKC, Rym, N. Singh, and Doe to appear at a hearing on July 19, 2022 (the "Hearing") to show cause why default judgment should not be entered against them, warning that the failure to respond "may be grounds for granting of a default judgment against them, in which event [D]efendants will have no trial."  (ECF No. 102).

On May 17, 2022, the Court held a telephone status conference at which Plaintiffs' counsel, but not counsel for any Defendant, appeared.  (ECF min. entry May 17, 2022; see ECF No. 76 (scheduling status conference)).  The Court then ordered Aaron, D. Singh, and Bawa to show cause why they failed to appear and why the Court should not direct that certificates of default be entered against them for their failure to continue to appear and defend in this action.  (ECF No. 103 (the "Third OTSC")).  After Ahluwalia provided a satisfactory explanation for his failure to attend the conference (ECF No. 104), the Court deemed the Third OTSC resolved and reminded the parties of the deadlines in the Revised CMP.  (ECF No. 105).

On June 13, 2022, the parties having failed to certify the close of fact discovery by the June 10, 2022 deadline in the Revised CMP, the Court directed the parties to file a status letter.  (ECF No. 106).  On June 15, 2022, the parties advised that discovery and settlement negotiations were "ongoing" and requested an additional 30 days to complete discovery.  (ECF No. 108).  The Court granted the parties' request, and adjourned to July 18, 2022 the deadline for the parties to certify the completion of fact discovery.  (ECF No. 109).

At the Hearing on July 19, 2022, neither Aangan LLC nor the Defaulting Defendants appeared (see ECF No. 122 at 2), but Plaintiffs only sought a default judgment against the Defaulting Defendants and did "not seek entry of a default judgment against Aangan [LLC], despite entry of a certificate of default against [it] following its failure to continue to appear and defend in this action." (ECF No. 113 at 1; see ECF No. 122 at 2 ("[T]he defaulting defendants are [RKC], Rym [], and then individual defendants N[.] Singh and [] Doe.")). At the Hearing, Judge Failla "accept[ed] as true the well-pleaded allegations of the complaint" and found that the Defaulting Defendants "engaged in violations of the FLSA and of the [NYLL,]" and were "in fact liable" as to the ten claims in the Complaint. (ECF No. 122 at 5–6). After the Hearing, Judge Failla entered default judgment against the Defaulting Defendants and referred the matter to the undersigned for a damages inquest. (ECF Nos. 111 (the "First Default Judgment"); 112). The Court then ordered Plaintiffs to order a transcript of the Hearing, serve a copy of the First Default Judgment on the Defaulting Defendants, and state whether they sought a default judgment against Aangan LLC, and if not, explaining how they intended to prosecute this action against it. (ECF No. 113). After Plaintiffs subsequently clarified that they continued to seek a default judgment against Aangan LLC, (ECF No. 115), Judge Failla directed Plaintiffs to renew their motion for a default judgment as to Aangan LLC. (ECF No. 116). Plaintiffs did so (ECF Nos. 117–21), and following a second hearing on November 18, 2022 at which Aangan LLC failed to appear, Judge Failla entered a default judgment as to Aangan LLC (ECF No. 131), and again referred the matter to the undersigned for an inquest on damages. (ECF No. 132).

On November 23, 2022, the Court directed Plaintiffs to file the Damages Submission by December 23, 2022, and Aangan LLC and the Defaulting Defendants to respond by January 13,

2023, warning them that the failure to respond or contact the Court would result in the issuance of a report and recommendation based on Plaintiffs' Damages Submission alone. (ECF No. 133 (the "First Scheduling Order")).[7] After Plaintiffs failed to file the Damages Submission by the deadline in the First Scheduling Order, on December 28, 2022, the Court sua sponte extended Plaintiffs' deadline to December 30, 2022 and Defaulting Defendants' response deadline to January 20, 2023, repeating the Warning. (ECF No. 134). Between December 28, 2022 and March 6, 2023, Plaintiffs requested, and the Court granted, three additional extensions of their deadline. (ECF Nos. 135–38; 146; 147).

On April 5, 2023, Plaintiffs' counsel moved to withdraw as counsel for Candido (ECF No. 149 (the "Withdrawal Motion")), who had "stopped communicating" with counsel. (ECF No. 149-1 ¶ 3). On April 10, 2023, the Court adjourned sine die Plaintiffs' deadline to file the Damages Submission pending resolution of the Withdrawal Motion. (ECF No. 152 at 2).

On May 12, 2023, the Court granted the Withdrawal Motion (ECF No. 156 (the "Withdrawal Order")), and directed Plaintiffs to file the Damages Submission by June 16, 2023, and Aangan LLC and the Defaulting Defendants to respond by July 27, 2023. (ECF No. 57 (the "Second Scheduling Order")). In the Withdrawal Order, the Court directed Candido to notify the Court by June 16, 2023 whether he intended to retain new counsel or proceed pro se (the "Notice"). (ECF No. 156 at 2). The Court advised Candido that he could "satisfy the Notice requirement by filing his Damages Submission." (Id.) Plaintiffs served the Withdrawal Order and

---

[7] Specifically, the Court warned, in capital letters, that "[i]f the Defaulting Defendants (1) fail to respond to Plaintiffs' submissions, or (2) fail to contact my Chambers by January 13, 2023 and request an in-court hearing, I intend to issue a report and recommendation concerning damages based on Plaintiffs' written submissions alone without an in-court hearing." (ECF No. 133 at 1–2 (the "Warning")).

the Second Scheduling Order on Candido on May 12, 2023, and the Second Scheduling Order on the Defaulting Defendants on May 16, 2023.  (ECF Nos. 158–59).

On May 15, 2023, the Clerk of Court mailed the Withdrawal Order and the Second Scheduling Order to Candido at the address provided by Plaintiffs' counsel. (ECF min. entries May 15, 2023).  In the Withdrawal Order, the Court advised Mr. Candido that, "if this is not his address, it is his obligation to promptly notify the Court of his current address, and that failure to do so may result in dismissal of his claims." (ECF No. 156 at 2).  On May 24, 2023, the copies of the Withdrawal Order and the Second Scheduling Order mailed to Candido were returned to the Court as undeliverable.  (ECF min. entries May 24, 2023).

On June 13, 2023, Plaintiffs filed the Damages Submission and Proposed Findings with the Court and served them on the Defaulting Defendants.  (ECF Nos. 160–61).  On July 28, 2023, the action was reassigned to the Honorable Jessica G. L. Clarke.  (ECF min. entry July 28, 2023).

On September 22, 2023, Candido having failed to file the Notice or his Damages Submission, provide a current address, or otherwise communicate with the Court, the undersigned recommended that Candido's claims be dismissed without prejudice "in light of the Court's inability to proceed [with the damages inquest] without updated contact information for" Candido.  (ECF No. 163 at 4–5 (the "R&R")).  The same day, Plaintiffs' counsel served a copy of the R&R on Candido.  (ECF No. 164).  On October 12, 2023, Judge Clarke adopted the R&R and dismissed Candido's claims.  (ECF No. 167).

On December 15, 2023, Plaintiffs notified the Court that they had accepted an offer of judgment under Federal Rule of Civil Procedure 68 against the Settling Defendants in the amount of $25,000.00, payable "over one (1) year in four (4) equal installments" of $6,250.00.

(ECF No. 172-1 at 2).  On December 18, 2023, Judge Clarke entered the Judgment against Aangan LLC, Aaron, and D. Singh.  (ECF No. 174).

On December 19, 2023, the Court directed Plaintiffs to file a letter by December 22, 2023 (i) advising whether they intended to pursue default judgment against the Defaulting Defendants and (ii) reporting on the status of their claims against Bawa.  (ECF No. 175).  On December 21, 2023, Plaintiffs represented that they intend to pursue default judgment against the Defaulting Defendants and that they "will dismiss all claims against [] Bawa."  (ECF No. 176).

On April 11, 2024, Plaintiffs refiled their Damages Submission.  (ECF No. 179 (the "Refiled Damages Submission")).  The Refiled Damages Submission is largely similar to the Damages Submission, except that it includes: (i) a declaration signed by Candido dated May 2, 2022, attesting to his employment and hours worked at Aangan; (ii) a chart reflecting Candido's alleged damages; and (iii) billing records and invoices reflecting attorneys' fees and costs that are <u>less</u> than those reflected in the Damages Submission.  (<u>See</u> ECF Nos. 179-6; 179-9; 179-10; <u>see</u> <u>also</u> ECF No. 179 ¶¶ 32–54; 125–31).

### III.<u>DISCUSSION</u>

#### A.  <u>Legal Standards</u>

##### 1.  <u>Obtaining a Default Judgment</u>

A party seeking a default judgment must follow the two-step procedure set forth in Federal Rule of Civil Procedure 55.  <u>See</u> <u>Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC</u>, 779 F.3d 182, 186–87 (2d Cir. 2015) (<u>per</u> <u>curiam</u>).  First, under Rule 55(a), where a party has failed to plead or otherwise defend in an action, the Clerk of the Court must enter a certificate of default.  <u>See</u> Fed. R. Civ. P. 55(a).  Second, after entry of the default, if the

party still fails to appear or move to set aside the default, the Court may enter a default judgment. See Fed. R. Civ. P. 55(b).  Whether to enter a default judgment lies in the "sound discretion" of the trial court.  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).  Because a default judgment is an "extreme sanction" that courts are to use as a tool of last resort, Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981) (per curiam), the district court must "carefully balance the concern of expeditiously adjudicating cases, on the one hand, against the responsibility of giving litigants a chance to be heard, on the other."  Lopez v. Emerald Staffing, Inc., No. 18 Civ. 2788 (SLC), 2020 WL 915821, at *4 (S.D.N.Y. Feb. 26, 2020).

In considering whether to enter a default judgment, district courts are "guided by the same factors [that] apply to a motion to set aside entry of a default."  First Mercury Ins. Co. v. Schnabel Roofing of Long Is., Inc., No. 10 Civ. 4398 (JS) (AKT), 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011).  "These factors include:  (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense."  Avail 1 LLC v. Latief, No. 17 Civ. 5841 (FB) (VMS), 2020 WL 5633869, at *4 (E.D.N.Y. Aug. 14, 2020), adopted by, 2020 WL 5633099 (E.D.N.Y. Sept. 21, 2020) (citing Swarna v. Al-Awadi, 622 F.3d 123, 142 (2d Cir. 2010)); see Enron, 10 F.3d at 96 (noting that "[a]lthough the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment [] because the concepts of finality and litigation repose are more deeply implicated in the latter action").

### 2. Determining Liability

A defendant's default is deemed "a concession of all well-pleaded allegations of liability," Rovio Ent., Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), but a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants." Gesualdi v. Quadrozzi Equip. Leasing Corp., 629 F. App'x 111, 113 (2d Cir. 2015) (summary order). The Court must determine "whether the allegations in [the] complaint establish the defendants' liability as a matter of law." Id. If the Court finds the well-pleaded allegations establish liability, the Court analyzes "whether plaintiff has provided adequate support for the relief it seeks." Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). If, however, the Court finds that the complaint fails to state a claim on which relief may be granted, the Court may not award damages, "even if the post-default inquest submissions supply the missing information." Lopez, 2020 WL 915821, at *4.

### 3. Determining Damages

Once liability has been established, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Getty Images (US) Inc. v. Advernet, Inc., 797 F. Supp. 2d 399, 411 (S.D.N.Y. 2011) (citing Credit Lyonnais Sec. (USA) v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). A plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of damages." Lopez, 2020 WL 915821, at *4. The evidence the plaintiff submits must be admissible. See Poulos v. City of New York, No. 14 Civ. 3023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), adopted by, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); see also House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("damages must be based on

admissible evidence").  If the documents the plaintiff has submitted provide a "sufficient basis

from which to evaluate the fairness of" the requested damages, the Court need not conduct an

evidentiary hearing.  Fustok v. ContiCommodity Servs. Inc., 873 F.2d 38, 40 (2d Cir. 1989); see

Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)

(noting that a court may determine appropriate damages based on affidavits and documentary

evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in

the default judgment").

With respect to claims for unpaid wages, when the employer's payroll records are

inaccurate or incomplete, "an employee has carried out his burden if he proves" enough for the

court to make an "inference" that he "has in fact performed work for which he was improperly

compensated and if he produces sufficient evidence to show the amount and extent of that

work."  Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011).  The Court may credit

plaintiffs' "recollections regarding their hours and pay in conducting [the] inquest."  Coley v.

Vannguard Urban Improvement Ass'n, Inc., No. 12 Civ. 5565 (PKC) (RER), 2018 WL 1513628, at *7

(E.D.N.Y. Mar. 29, 2018).  The Court "must ensure that Plaintiffs' approximations and estimates

are reasonable and appropriate."  Id.  Ultimately, the default judgment the Court enters "must

not differ in kind from, or exceed in amount, what is demanded in the pleadings."

Fed. R. Civ. P. 54(c); see Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007) (limiting damages to those

specified in demand in complaint "ensures that a defendant who is considering default can look

at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and

then default without the need to hire a lawyer"); Joint Stock Co. Channel One Russia Worldwide

v. Infomir LLC, No. 16 Civ. 1318 (GBD) (BCM), 2018 WL 4760345, at *1 (S.D.N.Y. Sept. 28, 2018)

(holding that plaintiff could not recover damages for unalleged claims against defaulted defendant).

### B. **Default Judgment**

In accordance with the two-step process in Rule 55, the Clerk of Court entered certificates of default as to the Defaulting Defendants (ECF Nos. 85–87; 92), and they have failed to appear or otherwise challenge the default.  The Court's analysis of the relevant factors set forth above reveals, first, that Defaulting Defendants' failure to submit any written reply to Plaintiffs' Damages Submission, after having been properly served, gives rise to the fair inference that their default was willful.  See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that a failure to respond to a complaint and subsequent motion for default judgment "indicate[s] willful conduct").  Second, delaying entry of a default judgment might prejudice Plaintiffs.  See Inga v. Nesama Food Corp., No. 20 Civ. 909 (ALC) (SLC), 2021 WL 3624666, at *6 (S.D.N.Y. July 30, 2021) (finding that FLSA plaintiff would "be prejudiced in the absence of a default judgment, not only by the delay in resolving this action, but by his inability to recover from another source for the lost wages and other losses he sustained while working for Defendants"), adopted by, 2021 WL 3617191 (S.D.N.Y. Aug. 16, 2021).  Third, the Defaulting Defendants have failed to appear, answer the Complaint, and respond to the Court's orders.  Because the requirements of Rule 55 have been satisfied and the relevant factors weigh in Plaintiffs favor, the Court respectfully recommends that a default judgment against the Defaulting Defendants and in favor of Plaintiffs be entered.

C. **Liability**

1. **Jurisdiction and Venue**

As a threshold matter, the Court has subject matter jurisdiction over this action. Plaintiffs sue under a federal statute—the FLSA—that gives rise to the Court's subject matter jurisdiction under 28 U.S.C. § 1331. The Court may exercise supplemental jurisdiction over Plaintiffs' "NYLL and WTPA claims because they arise out of the same facts and circumstances as the FLSA claims." Inga, 2021 WL 3624666, at *6.

The Court also has personal jurisdiction over Defendants, which is a "necessary prerequisite to entry of a default judgment." Pinzon v. 467 Star Deli Inc., No. 22 Civ. 6864 (JGK) (SLC), 2023 WL 5337617, at *4 (S.D.N.Y. July 31, 2023), adopted by, 2023 WL 5334757 (S.D.N.Y. Aug. 18, 2023). The Court has personal jurisdiction over RKC and Rym, which are New York corporations that operate Aangan, a restaurant in New York City. (ECF No. 1 ¶¶ 31–32). N. Singh and Doe are both individuals who acted as owner, officers, or agents of Aangan LLC, RKC, and Rym. (Id. ¶¶ 34, 37). Plaintiffs also properly served each of the Defaulting Defendants. (ECF Nos. 22; 24; 26; 29). See Pinzon, 2023 WL 5337617, at *4 (personal jurisdiction established over defendant deli and individual defendants under the same circumstances).

Venue is proper because Aangan, where Plaintiffs worked, is in this District, see 28 U.S.C. § 1391(b)(1), and because the events and omissions giving rise to Plaintiffs' claims occurred in this District. See 28 U.S.C. § 1391(b)(2). (ECF No. 1 ¶¶ 2, 5).

2. **Statute of Limitations**

Under the NYLL, the statute of limitations is six years. See NYLL § 198(3). Under the FLSA, the statute of limitations is two years, or, if the violations were "willful," three years. See

20

29 U.S.C. § 255(a); see also McLaughlin v. Richland Shoe Co., 486 U.S. 128, 129 (1988). An FLSA violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited." McLaughlin, 486 U.S. at 133. Although plaintiffs may not recover under both the FLSA and the NYLL for the same injury, courts allow plaintiffs to recover under the statute that provides for the greatest relief. Ni v. Bat-Yam Food Servs. Inc., No. 13 Civ. 7274 (ALC) (JCF), 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016).

Here, Maldonado worked at Aangan from June 2019 until October 10, 2020, C. Saldaña from December 2019 until October 3, 2020, and V. Saldaña from August 2015 until October 11, 2020. (ECF Nos. 1 ¶¶ 22, 26, 28, 50, 98, 116; 160 ¶¶ 7, 27, 45; 160-2 at 2 ¶ 9, 6 ¶ 9, 10 ¶ 9). Plaintiffs filed the Complaint on November 16, 2020. (ECF No. 1). Thus, all three Plaintiffs' employment periods are entirely within the NYLL's six-year statute of limitations, but V. Saldaña's would not be entirely covered by the FLSA's shorter statute of limitations.[8] Because the NYLL provides for equal or greater relief than the FLSA, the Court respectfully recommends awarding Plaintiffs damages under the NYLL. See, e.g., Suriel v. Cruz, No. 20 Civ. 8442 (VSB) (SLC), 2022 WL 1750232, at *9 (S.D.N.Y. Jan. 10, 2022), adopted by, 2022 WL 1751163 (S.D.N.Y. May 31, 2022).

### 3. FLSA and NYLL Elements

To state a claim for wages under the FLSA, a plaintiff must allege that: (1) "she was the defendant's employee," (2) "her work involved interstate activity," and (3) "she worked for hours for which he did not receive minimum and/or overtime wages." Tackie v. Keff Enter., Inc.,

---

[8] The FLSA's three-year statute of limitations for willful violations, and the two-year period applicable to non-willful violations would not entirely cover V. Saldaña's five-year employment period. Because Plaintiffs are "being awarded damages under New York Labor Law, which has a six-year statute of limitations," and "this issue need not be further considered in this case." Pinzon, 2023 WL 5337617, at *5 n.3.

No. 14 Civ. 2074 (JPO), 2014 WL 4626229, at *2 (S.D.N.Y. Sept. 16, 2014). A wage-and-hour claim under the NYLL involves a similar analysis, "except that the NYLL does not require plaintiffs to show a nexus with interstate commerce or a minimum amount of annual sales." Id. at *2 n.2. To recover overtime compensation, plaintiffs "must allege sufficient factual matter to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours." Lundy v. Catholic Health Sys. of Long Island, Inc., 711 F.3d 106, 114 (2d Cir. 2013). To recover spread-of-hours pay, plaintiffs must also allege that they worked "more than ten hours per day . . . and [were] not paid an additional hour at the minimum wage rate for days in which [they] worked [ten] or more hours." Garcia v. Hirakegoma Inc., No. 17 Civ. 7608 (SLC), 2020 WL 1130765, at *4 (S.D.N.Y. Mar. 9, 2020).

### 4. The Employment Relationship

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Courts afford the term employer "an expansive definition with 'striking breadth.'" Garcia, 2020 WL 1130765, at *5 (quoting Nationwide Mut. Ins. Co. v. Darden, 503 US. 318, 326 (1992)). Under the FLSA, "[a]n individual may simultaneously have multiple 'employers,'" such that "'all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA].'" Martin v. Sprint United Mgmt. Co., 273 F. Supp. 3d 404, 421 (S.D.N.Y. 2017) (quoting 29 C.F.R. § 791.2(a)).

To determine whether Defendants were Plaintiffs' employer for FLSA purposes, the Court must examine the "economic reality" of the working relationship. Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013). Courts in the Second Circuit consider four non-exclusive factors

to assess the "economic reality" of an alleged employment relationship, including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. at 105–06 (quoting Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008)). This "inquiry is a totality-of-the-circumstances approach, so no one factor is dispositive." Tackie, 2014 WL 4626229, at *2.

Under the NYLL, the definition of "employer" is also broad, see NYLL § 190(3),[9] "and the crucial inquiry, in determining whether an employer-employee relationship exists, is the 'degree of control exercised by the purported employer over the results produced or the means used to achieve the results.'" Garcia, 2020 WL 1130765, at *5 (quoting Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)). In the absence of a decision from the New York Court of Appeals answering "the question of whether the test for 'employer' status is the same under the FLSA and the NYLL," Camara v. Kenner, No. 16 Civ. 7078 (JGK), 2018 WL 1596195, at *7 (S.D.N.Y. Mar. 29, 2018), "[t]here is general support for giving FLSA and the [NYLL] consistent interpretations . . . [a]nd there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." Hart, 967 F. Supp. 2d at 924. "Accordingly, courts in this District regularly apply the same tests to determine whether entities were joint employers under NYLL and the FLSA." Martin, 273 F. Supp. 3d at 422.

Plaintiffs allege that the Defaulting Defendants employed Maldonado and V. Saldaña as delivery workers, and C. Saldaña as a dishwasher, porter, and food preparer. (ECF Nos. 1 ¶¶ 4,

---

[9] NYLL § 190(3) defines "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."

23

10, 51, 99, 116–19; 160 ¶¶ 8, 28, 45–47; 160-2 at 2 ¶ 9, 6 ¶ 9, 10 ¶¶ 9–10). They allege that the Defaulting Defendants "possessed operational control over" and "controlled significant functions of" RKC and Rym, and "possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs[.]" (ECF No. 1 ¶¶ 34, 37, 39, 41). Plaintiffs therefore allege that Defendants were joint employers within the meaning of the FLSA and NYLL. (Id. ¶ 42). Accordingly, Plaintiffs have adequately alleged employer-employee relationships with the Defaulting Defendants. See Pinzon, 2023 WL 5337617, at *7. In any event, by their default, the Defaulting Defendants have admitted their status as Plaintiffs' employer. See Suriel, 2022 WL 1750232, at *11; Rovio, 97 F. Supp. 3d at 545. Because they were Plaintiffs' employer, they are jointly and severally liable under the FLSA and NYLL for any damages award. See Pinzon, 2023 WL 5337617, at *7; Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011) (imposing joint and several liability on defaulting corporate and individual defendants where allegations that individual defendant "was an owner, partner, or manager," along with his default, established defendants as employer under the FLSA and NYLL).

### 5. Interstate Commerce

Under the FLSA, Plaintiffs must establish that they or their employer was engaged in interstate commerce. See Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015) ("[e]ngagement in interstate commerce, either by an employee or by the employer as a whole, is a prerequisite for liability for the FLSA's overtime requirement."); 29 U.S.C. § 207(a)(1) (stating that employees "engaged in commerce or in the production of goods for commerce" are entitled

to overtime compensation at "one and one-half times the regular rate at which [they are] employed"); see also 29 U.S.C. § 203(s)(1) (defining "[e]nterprise engaged in commerce").

Plaintiffs have plausibly alleged that they "regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York." (ECF No. 1 ¶¶ 54, 100, 120).  In addition, Aangan is located in New York City (id. ¶ 2).  Plaintiffs have also alleged that, in each year of their employment, the Defaulting Defendants "both separately and jointly, had a gross annual volume of sales of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated)."  (Id. ¶ 46).  Moreover, "local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." Cabrera v. Canela, 412 F. Supp. 3d 167, 173 (E.D.N.Y. 2019) (quoting Archie v. Grand Cent. P'ship, Inc., 997 F. Supp. 504, 530 (S.D.N.Y. 1998)); see Victor v. Sam's Deli Grocery Corp., No. 19 Civ. 2965 (SLC), 2022 WL 3656312, at *8 (S.D.N.Y. Aug. 25, 2022) ("it [is] reasonable to infer that the myriad goods necessary to operate a [] restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State") (quoting Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015), adopted by, 93 F. Supp. 3d 19 (E.D.N.Y. 2015)).  Accordingly, Plaintiffs' allegations meet the threshold for enterprise liability under the FLSA, see 29 U.S.C. § 203(s)(1)(A), and they have satisfied the interstate commerce element for FLSA liability.  See Suriel, 2022 WL 1750232, at *11.

### 6. Unpaid Minimum Wages

The FLSA and NYLL require an employer to pay at least the statutory minimum wage for each hour an employee works in a work week ("Straight Time Wages").  See 29 U.S.C. § 206(a);

12 N.Y.C.R.R. § 146-1.1(a). The FLSA requires employers to pay employees at least the federal minimum wage for every hour worked, see 29 U.S.C. § 206, or the state minimum wage if it is greater. See 29 U.S.C. § 218(a). "[I]n the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." Gallego v. Adyar Ananda Bhavean Corp., No. 16 Civ. 4631 (AJN), 2018 WL 4735710, at *6 (S.D.N.Y. Sept. 30, 2018).

Under both the FLSA and NYLL, "all of the time worked during a continuous workday is compensable, save for bona fide meal breaks." Hart v. Rick's Cabaret Int'l Inc., 60 F. Supp. 3d 447, 475 n.15 (S.D.N.Y. 2014) (citing IBP, Inc. v. Alvarez, 546 U.S. 21, 37 (2005)). A meal break is "bona fide" when the employee is "completely relieved from duty for the purposes of eating regular meals." 29 C.F.R. § 785.19(a); see Victor, 2022 WL 3656312, at *9. Where the plaintiff "asserts that he did not receive any meal or rest breaks[,] . . . all of [his] time worked [is] compensable." Villanueva v. 179 Third Ave. Rest. Inc., 500 F. Supp. 3d 219, 235 (S.D.N.Y. 2020), adopted by, 2021 WL 2139441 (S.D.N.Y. May 26, 2021).

The NYLL requires certain employers to provide: (1) for employees who work shifts of more than six hours, a meal period of at least 30 minutes within the period encompassing 11:00 a.m. to 2:00 p.m.; (2) an additional 20-minute period between 5:00 p.m. and 7:00 p.m. for employees whose shifts started before 11:00 a.m. and continued later than 7:00 p.m.; and/or (3) a 45-minute meal period at a time midway between the beginning and end of the shift for employees whose shifts last more than six hours and start between 1:00 p.m. and 6:00 a.m. See NYLL § 162(2)–(4); see also Victor, 2022 WL 3656312, at *9. Plaintiffs allege that the Defaulting Defendants did not grant them "any breaks or meal periods of any kind." (ECF No. 1 ¶¶ 63, 111, 130; see ECF No. 160-2 at 3 ¶ 19, 7 ¶ 22, 11 ¶ 22). Thus, "all of [their] time

26

worked [is] compensable." Villanueva, 500 F. Supp. 3d at 235; accord Victor, 2022 WL 3656312, at *9.

Employers may compensate tipped employees at a lower hourly rate by crediting a portion of their tips against the minimum wage. See 29 U.S.C. § 203(m)(2)(A)–(B); 12 N.Y.C.R.R. § 146-1.3(b); Victor, 2022 WL 3656312, at *9; see also Zhang v. Hiro Sushi at Ollies, Inc., No. 17 Civ. 7066 (JPC), 2022 WL 2668263, at *8 (S.D.N.Y. July 11, 2022). "To be eligible to take a tip credit, however, the employer must satisfy certain prerequisites." Kim v. Kum Gang, Inc., No. 12 Civ. 6344 (MHD), 2015 WL 2222438, at *23 (S.D.N.Y. Mar. 19, 2015). These prerequisites include the requirement that the employer notify the employee, before the employment begins, "of its intention to include tip income when calculating wages actually paid for minimum wages purposes." Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *2 (S.D.N.Y. Sept. 30, 2010). "The employer bears the burden of proving that this notice was given." Victor, 2022 WL 3656312, at *9.

The NYLL also allows an employer to pay tipped food service workers a lower minimum wage under certain conditions. See NYLL § 652(4). "An employer may receive the benefit of this tip credit only if the employer provides to each employee a statement with every payment of wages listing allowances claimed as part of the minimum wage and maintains and preserves for not less than six years weekly payroll records which shall show for each employee allowances claimed as part of the minimum wage." Cao, 2010 WL 4159391, at *2 (quoting Padilla v. Manlapaz, 643 F. Supp. 2d 302, 309–10 (E.D.N.Y. 2009)); see 12 N.Y.C.R.R. §§ 146-1.3, 146-2.2. Under both the FLSA and the NYLL, the notice must be sufficient to apprise the employee of the tip credit provision and the fact that the employer intends to take the credit as to the employee's

27

wages. See Victor, 2022 WL 3656312, at *9; see also Salinas v. Starjem Rest. Corp., 123 F. Supp 3d 442, 467 (S.D.N.Y. 2015) (finding generic FLSA posters to be insufficient notice).

The Court finds that the Defaulting Defendants do not meet the requirements for taking a tip credit. Maldonado and V. Saldaña allege, and the Defaulting Defendants have admitted by their default, that the Defaulting Defendants withheld a portion of their tips without ever notifying them that any tips would be included as an offset to their wages. (ECF Nos. 1 ¶¶ 64–66, 131–33, 148–49; 160-2 at 3 ¶¶ 21–22, 11 ¶¶ 23–24). Because the Defaulting Defendants have not met the notice requirements of the FLSA and NYLL, they are not entitled to any tip credit against the minimum wage for Maldonado and V. Saldaña. See Victor, 2022 WL 3656312, at *10 (denying tip credit); Agureyev v. H.K. Second Ave. Rest. Inc., No. 17 Civ. 7336 (SLC), 2021 WL 847977, at *7 (S.D.N.Y. Mar. 5, 2021) (same).

"Because [the Defaulting] Defendants are not entitled to any tip credit, [they] were required to pay [Maldonado and V. Saldaña] full minimum wages, rather than the lower minimum wage for tipped workers." Lopez, 2020 WL 915821, at *9. Plaintiffs do not state the number of employees who worked at Aangan (see ECF Nos. 1; 160), so the Court applies the lower, small employer minimum wage rate. See Pinzon, 2023 WL 5337617, at *9 (applying lower, small employer rate where plaintiff failed to allege the number of employees); Reyes v. Lincoln Deli Groc. Corp., No. 17 Civ. 2732 (KBF), 2018 WL 2722455, at *7 (S.D.N.Y. June 5, 2018) (same). The Court's use of the lower minimum wage impacts the determination whether the Defaulting Defendants are liable for minimum and overtime wage violations, and the calculation of damages, discussed further below.

The New York State minimum wage rate for small employers in New York City during Plaintiffs' employment at Aangan was as follows:

| Time Period | Minimum Wage Rate[10] |
|---|---|
| August 1, 2015 – December 30, 2015 | $8.75 |
| December 31, 2015 – December 30, 2016 | $9.00 |
| December 31, 2016 – December 30, 2017 | $10.50 |
| December 31, 2017 – December 30, 2018 | $12.00 |
| December 31, 2018 – December 30, 2019 | $13.50 |
| December 31, 2019 – October 11, 2020 | $15.00 |

Maldonado was paid $200.00 per week, or approximately $5.00 per hour, from June 2019 until February 2020, and did not receive any wages for the period February 2020 until October 10, 2020 and the week of January 10, 2020.  (ECF Nos. 1 ¶¶ 58–60; 160 ¶¶ 14–15; 160-2 at 2–3 ¶¶ 15–16; 160-3 at 1).  C. Saldaña was paid $500.00 per week, or less than $.7.00 per hour, throughout his employment between December 2019 and October 3, 2020.  (ECF Nos. 1 ¶¶ 105–07; 160 ¶¶ 34–36; 160-2 at 7 ¶¶ 16–18; 160-3 at 1).  V. Saldaña was paid $160.00 per week, or $4.64 per hour, from August 2015 until December 2019, and $410.00 per week, or $4.59 per hour, from December 2019 until February 20, 2020, and did not receive any wages for the period from February 21, 2020 until October 11, 2020.  (ECF Nos. 1 ¶¶ 124–27; 160 ¶¶ 52–55; 160-2 at 10 ¶¶ 16–19; 160-3).  Thus, at no time during Plaintiffs' employment did the Defaulting Defendants pay them the required minimum wage.  Accordingly, Plaintiffs have established the Defaulting Defendants' liability for unpaid Straight Time Wages during the entire

---

[10] NYLL § 652(a)(ii).  Plaintiffs do not allege that Aangan had more than ten employees, so the Court employs the small employer minimum wage rates.  See Campos Marin v. J&B 693 Corp., No. 19 Civ. 569 (JGK) (KHP), 2022 WL 377974, at *7 (S.D.N.Y. Jan. 21, 2022) (applying lower, small employer rate where plaintiff had not alleged that employer had eleven or more employees), adopted by, 2022 WL 374522 (S.D.N.Y. Feb. 7, 2022); Reyes v. Lincoln Deli, 2018 WL 2722455, at *7 (same).

period of their employment and are entitled to recover damages in the amount by which they were underpaid.  See, e.g., Suriel, 2022 WL 1750232, at *13; Cao, 2010 WL 4159391, at *2.

### 7.  Unpaid Overtime Wages

Both the FLSA and the NYLL require an employer to pay an overtime rate of one-and-one-half times the employee's "regular rate" of pay.  29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2.  To state an overtime claim, a plaintiff "must allege only that she worked compensable overtime in a workweek longer than forty hours, and that she was not properly compensated for that overtime."  Tackie, 2014 WL 4626229, at *3.

All three Plaintiffs allege that they regularly worked more than 40 hours per week and that the Defaulting Defendants failed to pay them an overtime rate for the hours worked over 40 hours per week.  (ECF Nos. 1 ¶¶ 57, 102–04, 123, 139; 160-2 at 2–3 ¶¶ 14, 24; id. at 6–7 ¶¶ 12, 14–15, 24; id. at 11 ¶ 15).  According to the Damages Chart, however, Maldonado did not work more than 40 hours in any week.  (ECF No. 160-3 at 1).  Thus, only C. Saldaña and V. Saldaña have adequately stated claims for unpaid overtime wages.  See Suriel, 2022 WL 1750232, at *13 (holding that plaintiff stated claim for overtime wages); Agureyev, 2021 WL 847977, at *7 (S.D.N.Y. Mar. 5, 2021) (same).

### 8.  Spread-of-Hours Pay

Under the NYLL, employers must pay covered employees one extra hour of compensation, at the basic minimum wage rate, for each day on which they worked more than ten hours.  12 N.Y.C.R.R. § 142-2.4(a).  Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty."  Id. § 142-2.18.  "[T]he spread of hours regulations 'apply to all employees

in restaurants . . . regardless of a given employee's regular rate of pay.'"   Garcia, 2020 WL 1130765, at *5 (quoting Andrade v. 168 First Ave Rest. Ltd., No. 14 Civ. 8268 (JPO) (AJP), 2016 WL 3141567, at *4 (S.D.N.Y. June 3, 2016), adopted by, 2016 WL 3948101 (S.D.N.Y. July 19, 2016)).  Employees may recover spread-of-hours wages in addition to federal and state overtime wages.  See Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 339–41 (S.D.N.Y. 2005).

Plaintiffs allege that they regularly worked shifts longer than ten hours but were not given spread-of-hours pay.  (ECF Nos. 1 ¶¶ 187–88; 160-2 at 2–3 ¶¶ 14, 17; id. at 6–7 ¶¶ 14–15, 20; id. at 11 ¶¶ 15, 20).  In the Damages Chart, Plaintiffs include the average number of shifts over ten hours that each worked per week.  (ECF No. 160-3).  Accordingly, the Court finds that Plaintiffs have adequately supported their spread-of-hours claims and, under New York Law, the Defaulting Defendants are liable for the spread-of-hours wages they failed to pay Plaintiffs. See Agureyev, 2021 WL 847977, at *3.

### 9.  Liquidated Damages

Under the FLSA, "a plaintiff who demonstrates that he was improperly denied either minimum or overtime wages may recover, in addition to reimbursement of these unpaid wages, an 'additional equal amount as liquidated damages.'"   Lopez, 2020 WL 915821, at *10 (quoting 29 U.S.C. § 216(b)).  "[W]here the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA," the Court has the discretion to deny liquidated damages.  Barfield, 537 F.3d at 150 (quoting 29 U.S.C. § 260).  This burden is "a difficult one," id. (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)), and where "defendants never made this showing in light of their default, they have not rebutted the

presumption in favor of a liquidated damages award." Lopez, 2020 WL 915821, at *10. A plaintiff who "is entitled to liquidated damages under the FLSA, but has been awarded wage and overtime damages pursuant to the NYLL because state law provided the greater relief" is entitled to FLSA liquidated damages "based on 'the amount of actual damages that would have been awarded had the federal minimum wage rate applied.'" Id. (quoting Angamarca v. Pita Grill 7 Inc., No. 11 Civ. 7777 (JGK) (JLC), 2012 WL 3578781, at *7 (S.D.N.Y. Aug. 2, 2012), adopted by, 2012 U.S. Dist. LEXIS 190479 (S.D.N.Y. Dec. 13, 2012)).

The NYLL also authorizes liquidated damages. See Lopez, 2020 WL 915821, at *10. Effective November 24, 2009, "an employee was entitled to NYLL liquidated damages 'unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law.'" Id. (quoting NYLL § 198(1-a)). "Courts deem defendants' actions willful where they have defaulted, see, e.g., Angamarca, 2012 WL 3578781, at *8, and, consequently, such defaulting defendants will have '[o]bviously . . . made no showing of 'good faith.'" Lopez, 2020 WL 915821, at *10 (quoting Guaman v. J & C Top Fashion, Inc., No. 14 Civ. 8143 (GBD) (GWG), 2016 WL 791230, at *7 (S.D.N.Y. Feb. 22, 2016), adopted by, 2017 WL 111737 (S.D.N.Y. Jan. 11, 2017)). Effective April 9, 2011, the liquidated damages award under the NYLL is 100% of the amount of unpaid wages. NYLL §§ 198(1-a), 663(1).

The Second Circuit precludes a plaintiff from recovering liquidated damages under both the FLSA and the NYLL. See Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59, 60 (2d Cir. 2016) (summary order). A plaintiff recovers "under the statute that provides the greatest relief." Castillo v. RV Transp., Inc., No. 15 Civ. 527 (LGS), 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016). The NYLL allows for pre-judgment interest in addition to liquidated

32

damages, see NYLL § 198(1-a), but the FLSA does not.  See Agureyev, 2021 WL 847977, at *8. Accordingly, because the NYLL "provides greater relief to Plaintiffs [], [] the Court will apply its liquidated damages provisions."  Id.  (citing Garcia, 2020 WL 1130765, at *9).

Having defaulted, the Defaulting Defendants have not carried their burden of demonstrating good faith under the NYLL, see Victor, 2022 WL 3656312, at 12, and therefore Plaintiffs are entitled to liquidated damages equal to 100% of their unpaid wages. See id. (awarding liquidated damages of 100% of unpaid wages where defendants defaulted); Agureyev, 2021 847977, at *8 (same).

### 10. **Statutory Wage Notices and Statements**

Under the WTPA, "employers are required to provide employees with a notice containing the rate and frequency of their pay at the time of hiring, NYLL § 195(1), and to furnish them with a written statement with each payment of wages, listing the dates covered by the payment, the regular rate of pay, the overtime rate, and the number of hours worked, NYLL § 195(3)."  Juarez v. Manhattan Laundry Ctrs. Inc., No. 18 Civ. 2843 (VSB), 2023 WL 3614264, at *4 (S.D.N.Y. May 24, 2023).

Plaintiffs allege that the Defaulting Defendants failed to provide them with wage notices when they were hired and failed to furnish them with weekly wage statements.  (ECF Nos. 1 ¶¶ 68–70, 111–12, 135–37; 160 ¶¶ 27–28, 42–44, 66; 160-2 at 3 ¶¶ 25–27; id. at 6 ¶ 9; id. 7 ¶¶ 24–27; id. at 12 ¶ 31). While Plaintiffs sufficiently plead that the Defaulting Defendants failed to comply with NYLL §§ 195(1)(a) and 195(3), Plaintiffs nevertheless lack standing to maintain these claims.  "Article III standing requires plaintiffs to show (1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will

33

be redressed by a favorable decision.'"  Maddox v. Bank of N.Y. Mellon Tr. Co., N.A., 19 F.4th 58,

62 (2d Cir. 2021) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).  To demonstrate

an injury in fact, a plaintiff "must show the invasion of a [1] legally protected interest that is [2]

concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical."  Id.

(quoting Strubel v. Comenity Bank, 842 F.3d 181, 188 (2d Cir. 2016)).  For an "informational

injury" resulting from the failure to receive required information to give rise to standing, see

TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2214 (2021), a plaintiff must allege "downstream

consequences" resulting from the failure to receive the information that demonstrate an interest

in using the information "beyond bringing [the] lawsuit."  Harty v. W. Point Realty, Inc.,

28 F.4th 435, 444 (2d Cir. 2022).

Here, Plaintiffs do not allege any facts describing an "injury in fact sufficient to confer

standing and [have] not demonstrated how [the] lack of notice resulted in an injury greater than

[the Defaulting] Defendants'" wage violations.  Pinzon, 2023 WL 5337617, at *11 (quoting Gao v.

Umi Sushi, No. 18 Civ. 6439 (ALC) (SN), 2023 WL 2118203, at *7 (S.D.N.Y. Jan. 31, 2023), adopted

by, 2023 WL 2118080 (S.D.N.Y. Feb. 17, 2023)).  Further, Plaintiffs have not identified an

informational injury giving rise to consequences other than this lawsuit.  Id.  Following the

decisions of other courts in this District, the Court therefore respectfully recommends that

Plaintiffs' request for statutory damages under the WTPA be DENIED.  Id.; accord Chen v. Hunan

Manor Enter. Inc., No. 17 Civ. 802 (GBD) (GWG), 2023 WL 5574854, at *13 (S.D.N.Y. Aug. 29,

2023); Najera v. Lake Ave Pizza LLC, No. 21 Civ. 6753 (LGS) (SLC), 2023 WL 5752588, at *9–10

(S.D.N.Y. Aug. 3, 2023), adopted by, 2023 WL 5748117 (S.D.N.Y. Sept. 6, 2023); Pinzon,

2023 WL 5337617, at *11; Reyes v. Coppola's Tuscan Grill, LLC, No. 21 Civ. 7040 (AT) (SN),

34

2023 WL 4303943, at *6 (S.D.N.Y. June 13, 2023), adopted by, 2023 WL 4304676 (S.D.N.Y. June 30, 2023); Belliard v. Tarnovsky, No. 20 Civ. 1055 (GBD) (KHP), 2023 WL 3004963, at *5–6 (S.D.N.Y. Mar. 6, 2023), adopted by, 2023 WL 3304723 (S.D.N.Y. May 8, 2023).

### 11. Equipment Costs

An employer violates the FLSA and the NYLL if it requires an employee to purchase "tools of the trade" used or required to perform the employer's work and the cost of the tool reduces the minimum or overtime wages owed to the employee. See Feng Chan v. Patel, No. 16 Civ. 1130 (AT) (SDA), 2019 WL 2763836, at *11 (S.D.N.Y. July 2, 2019) (quoting N.Y.C.R.R. § 146-2.7(c)); Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d 442, 476 (S.D.N.Y. 2015) (quoting 29 C.F.R. § 531.35); accord Campos Marin, 2022 WL 377974, at *10.  Maldonado attests that the Defaulting Defendants required him to purchase with his own funds "an electric bicycle, a bicycle cover, a helmet, a delivery bookbag, and monthly maintenance[,]" which totaled $2,210.00.  (ECF Nos. 160-2 at 4 ¶ 28; 160-3 at 2).  V. Saldaña attests that the Defaulting Defendants required him to purchase "an electric bicycle, two delivery bookbags, a helmet, a vest and bicycle maintenance[,]" which totaled $1,940.00.  (ECF No. 160-2 at 12 ¶ 31).  The Court accepts these factual allegations as true, considering that they were both employed as delivery workers and bicycles and related equipment were necessary for them to perform their jobs, and therefore respectfully recommends that the Defaulting Defendants be held liable for tools of the trade Maldonado and V. Saldaña purchased.  See Campos Marin, 2022 WL 377974, at *10 (awarding damages for tools of the trade to delivery workers who required bicycle to perform his job).

**D.  Damages**[11]

1.  **Evidentiary Basis**

The Court must also determine whether Plaintiffs have provided sufficient evidence to support their claims for damages.  See Transatlantic Marine, 109 F.3d at 111; Victor, 2022 WL 3656312, at *12.  In the Damages Submission, Plaintiffs include Plaintiffs' Declarations attesting to the dates and circumstances of their employment, and the Damages Chart.  (ECF Nos. 160-2; 160-3).  Despite warnings, the Defaulting Defendants have not responded to the Court's Orders or the Damages Submission or provided any contrary evidence.  The Court therefore finds that Plaintiffs have met their evidentiary burden of proving damages, and that an in-person hearing is unnecessary because the Damages Submission, combined with the Defaulting Defendants' admissions resulting from their default, constitute a sufficient basis from which to evaluate the fairness of Plaintiffs' damages request.  See, e.g., Fustok, 873 F.2d at 40; Victor, 2022 WL 3656312, at *12.

2.  **Straight Time Wages**

As discussed above, the Defaulting Defendants were required to pay Plaintiffs Straight Time Wages at New York's statutory minimum wage for the first 40 hours that they worked each week but paid them below that rate throughout Plaintiffs' employment.  (See § III.C.6, supra).  In the Damages Chart, Plaintiffs have made some calculation errors, and therefore, the Court has done independent calculations and respectfully recommends that Plaintiffs be awarded Straight Time Wages in the amounts below:

---

[11] As noted above (see § II.B, supra), the Refiled Damages Submission includes evidentiary support for Candido's alleged damages.  (See ECF Nos. 179-6; 179-9).  Because Candido's claims were dismissed (see ECF No. 167), the Court does not evaluate his alleged damages.

| Plaintiff | Time Period | Regular Hourly Pay Rate | Statutory Minimum Wage[12] | Under-payment Per Hour | Underpaid Straight Time Hours | Straight Time Wages Awarded |
|---|---|---|---|---|---|---|
| Maldonado[13] | 6/1/19-12/30/19 | $5.03[14] | $13.50 | $8.47 | 1,209.54[15] | $10,244.80 |
| | 12/31/19-2/14/20 | $5.03 | $15.00 | $9.97 | 261.21[16] | $2,604.26 |
| | 2/15/20-10/10/20 | $0.00 | $15.00 | $15.00 | 1,306.07[17] | $19,591.05 |
| **Total** | | | | | | **$32,440.11**[18] |
| **C. Saldaña** | 12/1/19-12/30/19 | $6.94[19] | $13.50 | $6.56 | 171.43[20] | $1,124.58 |
| | 12/31/19-3/15/20 | $6.94 | $15.00 | $8.06 | 434.29[21] | $3,500.38 |
| | 3/16/20-10/3/20 | $6.25 | $15.00 | $8.75 | 1,154.29[22] | $10,100.04 |
| **Total** | | | | | | **$14,725.00** |
| **V. Saldaña** | 8/1/15-12/30/15 | $4.64[23] | $8.75 | $4.11 | 749.14[24] | $3,078.97 |
| | 12/31/15-12/30/16 | $4.64 | $9.00 | $4.36 | 1,803.86[25] | $7,864.83 |
| | 12/31/16-12/30/17 | $4.64 | $10.50 | $5.86 | 1,798.93[26] | $10,541.73 |
| | 12/31/17-12/30/18 | $4.64 | $12.00 | $7.36 | 1,798.93[27] | $13,240.12 |

---

[12] NYLL § 652(1)(a)(ii).

[13] Plaintiffs correctly assert that Maldonado worked an average of 39.75 hours per week from June 1, 2019 to February 14, 2020, (see ECF No. 160-3 at 1), which is the hours he worked every week—38.5—plus 1.25 hours per week for the extra five hours he worked each month. (See ECF Nos. 1 ¶ 57; 160 ¶ 12).

[14] $200.00 weekly pay / 39.75 hours.

[15] (213 days / 7) x 39.75 hours.

[16] (46 days / 7) x 39.75 hours.

[17] (230 days / 7) x 39.75 hours.

[18] The Court's calculation of $32,440.11 in minimum wages owed to Maldonado is approximately $2,500.00 less than Maldonado requests. (See ECF No. 160-3 at 1).

[19] $500.00 weekly pay / 72 hours.

[20] (30 days / 7) x 40 hours.

[21] (76 days / 7) x 40 hours.

[22] (202 days / 7) x 40 hours.

[23] $160.00 weekly pay / 34.5 hours.

[24] (152 days / 7) x 34.5 hours.

[25] (366 days / 7) x 34.5 hours.

[26] (365 days / 7) x 34.5 hours.

[27] (365 days / 7) x 34.5 hours.

| | 12/31/18-11/30/19 | $4.64 | $13.50 | $8.86 | 1,651.07[28] | $14,628.48 |
|---|---|---|---|---|---|---|
| | 12/1/19-12/30/19 | $4.59[29] | $13.50 | $8.91 | 171.43[30] | $1,527.44 |
| | 12/31/19-2/20/20 | $4.59 | $15.00 | $10.41 | 297.14[31] | $3,093.23 |
| | 2/21/20-10/11/20 | $0.00 | $15.00 | $15.00 | 1,337.14[32] | $20,057.10 |
| **Total** | | | | | | **$74,031.90** |

### 3. Overtime Wages

The Court calculates appropriate overtime wages "by multiplying Plaintiffs' regular hourly rate (or the minimum wage rate, if their regularly hourly rate falls below the minimum wage) by one and one-half," then by multiplying that rate "by the number of hours in excess of forty hours they worked each week." Lopez v. MNAF Pizzeria, Inc., No. 18 Civ. 6033 (ALC), 2023 WL 6795811, at *4 (S.D.N.Y. Oct. 13, 2023). The damages to which C. Saldaña and V. Saldaña are entitled are equal to the appropriate overtime wages less what they were actually paid.

The Defaulting Defendants paid C. Saldaña and V. Saldaña below minimum wage for all hours worked, including those over 40 hours per week. (ECF Nos. 1 ¶¶ 105–07, 124–27; 160 ¶¶ 34–36, 52–55; 160-2 at 6 ¶¶ 16–18; id. at 10 ¶¶ 16–19; 160-3 at 1). The Court has done an independent calculation and respectfully recommends that they be awarded overtime wages as follows:

---

[28] (335 days / 7) x 34.5 hours.
[29] $410.00 weekly pay / 89.25 hours.
[30] (30 days / 7) x 40 hours.
[31] (52 days / 7) x 40 hours.
[32] (234 days / 7) x 40 hours.

| Plaintiff | Time Period | Number of Weeks | OT Hours Per Week | OT Paid | Correct OT Pay | Overtime Wages Awarded[33] |
|---|---|---|---|---|---|---|
| C. Saldaña | 12/1/19-12/30/19 | 4.29[34] | 32 | $952.72[35] | $2,779.92[36] | $1,827.20 |
| | 12/31/19-3/15/20 | 10.86[37] | 32 | $2,411.79[38] | $7,819.20[39] | $5,407.41 |
| | 3/16/20-10/3/20 | 28.86[40] | 40 | $7,215.00[41] | $25,974.00[42] | $18,759.00 |
| **Total** | | | | | | **$25,993.61**[43] |
| **V. Saldaña** | 12/1/19-12/30/19 | 4.29[44] | 49.25 | $969.79[45] | $4,278.47[46] | $3,308.68 |
| | 12/31/19-2/20/20 | 7.43[47] | 49.25 | $1,679.61[48] | $8,233.37[49] | $6,553.76 |
| | 2/21/20-10/11/20 | 33.43[50] | 49.25 | $0.00 | $37,044.62[51] | $37,044.62 |

---

[33] The difference between wages paid for overtime hours and wages that should have been paid.

[34] 30 days / 7.

[35] $6.94 (C. Saldaña's rate of pay) multiplied by the number of weeks and overtime hours worked per week.

[36] $20.25 (one and one-half times the statutory minimum wage of $13.50) multiplied by the number of weeks and overtime hours worked per week.

[37] 76 days / 7.

[38] See n.35, supra.

[39] $22.50 (one and one-half times the statutory minimum wage of $15.00) multiplied by the number of weeks and overtime hours worked per week.

[40] 202 days / 7.

[41] $6.25 (rate of pay) multiplied by the number of weeks and overtime hours worked per week.

[42] See n.39, supra.

[43] The Court's calculations of $14,725.00 and $25,993.61 owed to C. Saldaña in minimum and overtime wages, respectively, total $40,718.61.  This figure is approximately $570.00 less than he requested.  (See ECF No. 160-3 at 1).

[44] 30 days / 7.

[45] $4.59 (rate of pay) multiplied by the number of weeks and overtime hours worked per week.

[46] $20.25 (one and one-half times the statutory minimum wage of $13.50) multiplied by the number of weeks and overtime hours worked per week.

[47] 52 days / 7.

[48] See n.45, supra.

[49] $22.50 (one and one-half times the statutory minimum wage of $15.00) multiplied by the number of weeks and overtime hours worked per week.

[50] 234 days / 7.

[51] See n.49, supra.

| Total | | | | | $46,907.06[52] |
|-------|--|--|--|--|----------------|

### 4. Spread-of-Hours Wages

Spread-of-hours damages are calculated by multiplying the number of days an employee worked more than ten hours by "the basic minimum wage rate."  12 N.Y.C.R.R. § 142-2.4(a); see Agureyev, 2021 WL 847977, at *10.   Accordingly, the Court respectfully recommends that Plaintiffs be awarded spread-of-hours damages as follows:

| Plaintiff | Time Period | Spread-of-Hours Days Per Month | Months in Period | Applicable Minimum Wage[53] | Spread-of-Hours Wages Awarded |
|-----------|-------------|--------------------------------|------------------|------------------------------|-------------------------------|
| **Maldonado** | 6/1/19-12/30/19 | 1 | 6.97[54] | $13.50 | $94.10 |
| | 12/31/19-10/10/20 | 1 | 9.35[55] | $15.00 | $140.25 |
| **Total** | | | | | **$234.35**[56] |

| Plaintiff | Time Period | Spread-of-Hours Days Per Week[57] | Weeks in Period[58] | Applicable Minimum Wage[59] | Spread-of-Hours Wages Awarded |
|-----------|-------------|-----------------------------------|---------------------|------------------------------|-------------------------------|
| **C. Saldaña** | 12/1/19-12/30/19 | 6 | 4.29 | $13.50 | $347.49 |
| | 12/31/19-10/3/20 | 6 | 39.71 | $15.00 | $3,573.90 |

---

[52] The Court's calculations of $74,031.90 and $46,907.06 owed to V. Saldaña in minimum and overtime wages, respectively, total $120,938.96.  This figure is approximately $5,500.00 less than he requested. (See ECF No. 160-3 at 1).

[53] NYLL § 652(1)(a)(ii).

[54] Six months plus 30 out of 31 days in the month of December 2019.

[55] Nine months plus 1 out of 31 days in the month of December 2019 and 10 out of 31 days in the month of October 2020.

[56] The Court's calculation of $234.35 in spread-of-hours wages owed to Maldonado is approximately $830.00 less than he requested.  (See ECF No. 160-3 at 2).  The divergence appears to be due to Plaintiffs erroneously calculating spread-of-hours damages as if Maldonado worked one spread-of-hours day per week (see id.), while the Complaint and Damages Submission state that Maldonado worked one spread-of-hours day per month.  (See ECF Nos. 1 ¶ 57; 160 ¶ 12).

[57] (ECF Nos. 1 ¶ 123; 160 ¶ 51).

[58] See nn. 34, 37, 40, 44, 47, & 50, supra.

[59] NYLL § 652(1)(a)(ii).

| | | | | | |
|---|---|---|---|---|---|
| **Total** | | | | | **$3,921.39**[60] |
| **V. Saldaña** | 12/1/19-12/31/19 | 7 | 4.29 | $13.50 | $405.41 |
| | 12/31/19-10/11/20 | 7 | 40.86 | $15.00 | $4,290.30 |
| **Total** | | | | | **$4,695.71**[61] |

### 5. Liquidated Damages

Liquidated damages are calculated as "one hundred percent of the total amount of wages found to be due . . . ."  NYLL § 198(1-a).  For Maldonado, that is the sum of his unpaid Straight Time Wages ($32,440.11) and spread-of-hours wages ($234.35), or $32,674.46.  For C. Saldaña, it is the sum of his unpaid Straight Time Wages ($14,725.00), overtime wages ($25,993.61), and spread-of-hours wages ($3,921.39), or $44,640.00.  For V. Saldaña, it is also the sum of his unpaid Straight Time Wages ($74,031.90), overtime wages ($46,907.06), and spread-of-hours wages ($4,695.71), or $125,634.67.  Accordingly, we respectfully recommend that liquidated damages be awarded to Maldonado in the amount of $32,674.46, C. Saldaña in the amount of $44,640.00, and V. Saldaña in the amount of $125,634.67.

### 6. Equipment Costs

As set forth above, the Defaulting Defendants should be held liable for the tools of the trade they required Maldonado and V. Saldaña to purchase.  (See § III.C.11, supra).  Maldonado's tools of the trade totaled $2,210.00, and V. Saldaña's $1,940.00.  (ECF No. 160-3 at 2).  The Defaulting Defendants have not offered any evidence to rebut these costs, and, accordingly, we

---

[60] The Court's calculation of $3,921.39 in spread-of-hours wages owed to C. Saldaña is approximately $40.00 less than he requested.  (See ECF No. 160-3 at 2).

[61] The Court's calculation of $4,695.71 in spread-of-hours wages owed to V. Saldaña is approximately $30.00 less than he requested.  (See ECF No. 160-3 at 2).

respectfully recommend that Maldonado be awarded $2,210.00 and V. Saldaña $1,940.00 for purchasing tools of the trade.

### 7. Pre-judgment Interest

Plaintiffs seek pre-judgment interest on their compensatory damages under the NYLL. (ECF Nos. 1 at 30; 160 ¶¶ 93–95; 160-3 at 2). Although pre-judgment interest is not awarded where FLSA liquidated damages are awarded, "prejudgment interest is still appropriate where a plaintiff is awarded liquidated damages under the NYLL." Morales v. MwBronx, Inc., No. 15 Civ. 6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016). "Prejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages." MNAF, 2023 WL 6795811, at *3.

Under New York law, pre-judgment interest is awarded at the rate of nine percent per year. N.Y. C.P.L.R. § 5004. For damages occurring "at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001. "Simple prejudgment interest is calculated from a singular, midpoint date . . . [and] by multiplying the principal by the interest rate by the time period—from a singular, midpoint date—up until and including the date judgment is entered." MNAF, 2023 WL 6795811, at *3. The midpoint of a plaintiff's employment is often used as the date from which to calculate pre-judgment interest in wage-and-hour cases. Id.

The Defaulting Defendants employed Maldonado from June 1, 2019 to October 10, 2020, a total of 497 days. (ECF Nos. 1 ¶¶ 22, 50; 160 ¶¶ 7–8; 160-2 at 2 ¶ 9). The midpoint of his employment was February 4, 2020, 248 days after June 1, 2019. The Defaulting Defendants employed C. Saldaña from December 1, 2019 until October 3, 2020, a total of 307 days. The

midpoint of his employment was May 2, 2020, 153 days after December 1, 2019. The Defaulting Defendants employed V. Saldaña from August 1, 2015 until October 11, 2020, a total of 1,898 days. The midpoint of his employment was March 7, 2018, 949 days after August 1, 2015. Accordingly, the Court respectfully recommends awards of pre-judgment interest at a rate of nine percent per year calculated for Maldonado from February 4, 2020, for C. Saldaña from May 2, 2020, and for V. Saldaña from March 7, 2018, through the date of judgment. See Ortega v. Matilda Gourmet Deli Inc., No. 21 Civ. 10212 (LGS), 2023 WL 1861279, at *1 (S.D.N.Y. Feb. 9, 2023).

### 8. Post-judgment Interest

Plaintiffs also seek post-judgment interest. (ECF Nos. 1 at 30; 160 ¶¶ 93–95). The applicable federal statute provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . calculated from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961. The Second Circuit has explained that an award of post-judgment interest is mandatory. See Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008); see also Suriel, 2022 WL 1750232, at *17 (awarding post-judgment interest). Given the mandatory nature of post-judgment interest, the Court respectfully recommends that Plaintiffs be awarded post-judgment interest in an amount consistent with 28 U.S.C. § 1961.

### 9. Set-Off

"It is generally agreed that when a plaintiff settles with one of several joint tortfeasors, the nonsettling defendants are entitled to a credit for that settlement." McDermott, Inc. v.

AmClyde, 511 U.S. 202, 208 (1994).  "Under both [New York] and federal law," however, "it is the defendants' burden to establish their right to a set-off."  Granados v. Traffic Bar & Rest., Inc., No. 13 Civ. 500 (TPG) (JCF), 2016 WL 7410725, at *6 (S.D.N.Y. Dec. 21, 2016), adopted by, 2017 WL 1184277 (S.D.N.Y. Mar. 29, 2017).  Accordingly, "most courts in the Second Circuit have held that a defendant in default may not invoke the benefits of the set-off rule."  Xochimitl v. Pita Grill of Hell's Kitchen, Inc., No. 14 Civ. 10234 (JGK) (JLC), 2016 WL 4704917, at *12 (S.D.N.Y. Sept. 8, 2016), adopted by, 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016); see Chloe v. Zarafshan, No. 06 Civ.. 3140 (RJH) (MH), 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009) ("If, however, a party defaults in answering the complaint, courts have held that it may not invoke the benefits of the set-off rule.") (citing RLI Ins. Co. v. King Sha Group, Inc., 598 F.Supp.2d 438, 447 (S.D.N.Y.2009))

Here, although the Settling Defendants agreed to pay Plaintiffs $25,000.00 (see ECF No. 174), the Defaulting Defendants "have filed no opposition to [P]laintiffs' claims" and thus "have failed to carry their burden of establishing that they are entitled to any offset of damages based on [P]laintiffs' settlement with" the Settling Defendants.  Marvici v. Roche Facilities Maint. LLC, No. 21 Civ. 4259 (AS) (JLC), 2023 WL 5810500, at *4 (S.D.N.Y. Sept. 8, 2023) (declining to recommend offset of damages awarded against defaulting defendants based on settlement with other defendant), adopted by, 2023 WL 6648902 (S.D.N.Y. Oct. 12, 2023); see Granados, 2016 WL 7410725, at *6 (same).  Accordingly, we recommend that the damages award not be offset by the amount of the Judgment against the Settling Defendants.

### E. **Attorneys' Fees**[62]

Plaintiffs seek an award of attorneys' fees in the amount of $7,806.50.  (ECF No. 160 ¶ 73).

The NYLL permits successful plaintiffs to recover reasonably attorneys' fees.  NYLL §§ 198, 663.

"Whether an attorneys' fee award is reasonable is within the discretion of the court."  Victor,

2022 WL 3656312, at *13.  To determine a "presumptively reasonable fee," the Court multiples

the hours counsel reasonably spent on the litigation by a reasonable hourly rate.  Millea v. Metro-

N. R. Co., 658 F.3d 154, 166 (2d Cir. 2011).  "The presumptively reasonable fee boils down to

what a reasonable, paying client would be willing to pay, given that such a party wishes to spend

the minimum necessary to litigate the case effectively."  Simmons v. N.Y.C. Transit Auth. 575 F.3d

170, 174 (2d Cir. 2009).

#### 1.  **Reasonable Hourly Rate**

Plaintiffs were represented by attorneys Michael Faillace ("Faillace"), Catalina Sojo

("Sojo"), Frank Palermo ("Palermo"), and Ramsha Ansari ("Ansari"), with the assistance of

paralegals, at the firm CSM Legal P.C. (the "Firm").  (ECF Nos. 160 ¶ 73; 160-1 ¶ 12; 160-4).

Faillace billed his time at $300 or $450 per hour, Sojo at $300 per hour, Palermo at $350 per hour,

Ansari at $300 per hour, and the paralegals at $125 per hour.  (ECF Nos. 160 ¶ 73; 160-1 ¶ 12;

160-4).

To determine whether an hourly rate is reasonable, the Second Circuit has instructed

district courts to "apply the prevailing rate within the district for similar services by lawyers of

---

[62] As noted above (see § II.B, supra), the Refiled Damages Submission includes billing records and invoices reflecting attorneys' fees and costs that are less than those reflected in the Damages Submission. (Compare ECF No. 160-4 with ECF No. 179-10).  The Court disregards the Refiled Damages Submission and relies on the Damages Submission.

comparable experience and skill." Victor, 2022 WL 3656312, at \*14 (citing Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998)). A court may also adjust the hourly rate to account for case-specific variables such as:

> [i] the time and labor required; [ii] the novelty and difficulty of the questions; [iii] the skill requisite to perform the legal service properly; [iv] the preclusion of employment by the attorney due to acceptance of the case; [v] the customary fee; [vi] whether the fee is fixed or contingent; [vii] time limitations imposed by the client or the circumstances; [viii] the amount involved and the results obtained; [ix] the experience, reputation, and ability of the attorneys; [x] the "undesirability" of the case; [xi] the nature and length of the professional relationship with the client; and [xii] awards in similar cases.

Gamero v. Koodo Sushi Corp., 328 F. Supp. 3d 165, 173 (S.D.N.Y. 2018) (quoting Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (1983)).

In this district, courts generally award experienced wage-and-hour attorneys between $300 and $400 per hour. See Surdu v. Madison Glob., LLC, No. 15 Civ. 6567 (HBP), 2018 WL 1474379, at \*10 (S.D.N.Y. Mar. 23, 2018) (collecting cases regarding litigators with one or more decades of experience); see also Pastor v. Alice Cleaners, Inc., No. 16 Civ. 7264 (JLC), 2017 WL 5625556, at \*7–8 (S.D.N.Y. Nov. 21, 2017) (noting fees between $250 and $450 for experienced litigators in wage-and-hour cases in this district); but see Williams v. Epic Sec. Corp., 368 F. Supp. 3d 651, 658–59 (S.D.N.Y. 2019) (awarding $600 per hour to lead attorney with 32 years of experience and $350 per hour to junior partner with 11 years of non-wage-and-hour experience).

As to Faillace, Plaintiffs tout his qualifications and experience in support of his hourly rates of $300 and $450 (ECF Nos. 160 ¶ 75(a); 160-1 ¶ 15(a)), but fail to mention Faillace's suspension in this District:

[f]rom practice for two years by the Grievance Committee of the Southern District of New York on November 9, 2021, as a result of repeatedly taking fees from settlement in excess of the amounts awarded to him by court order (effectively stealing from his clients' recoveries); refusing to follow client directions as to the amounts they wanted to settle the case; and of misrepresenting facts relating to these practice to the Southern District Committee.

Victor, 2022 WL 3656312, at *14 (quoting Garcia Lazaro v. Best Fish Mkt. Corp., No. 21 Civ. 5305 (BMC), 2022 WL 280768, at *2 (E.D.N.Y. Jan. 29, 2022)).  Faillace billed 6.7 hours to Plaintiffs' matter (ECF Nos. 160 ¶ 73; 160-1 ¶ 12), and Judge Nathan granted his motion to withdraw from representing Plaintiffs on November 8, 2021.  (ECF No. 59).  The Second Circuit has instructed that, when determining the reasonableness of a claimed hourly rate, a court should consider "what a reasonable, paying client would be willing to pay."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 184 (2d Cir. 2000).  In evaluating whether Faillace's requested hourly rates are reasonable given his suspension, the Court is mindful that "few reasonable, paying clients are going to retain an attorney who is going to be suspended for, among other things, stealing settlements from clients."  Garcia Lazaro, 2022 WL 280768, at *3.  As several Courts in this District have held with respect to Faillace, the Court finds that "any recovery for [his] time spent on [plaintiff's] case would not be reasonable," and respectfully recommends that no fees be awarded with respect to Faillace.  Victor, 2022 WL 3656312, at *15; see Reyes v. BYUK 10 Corp., No. 19 Civ. 3919 (AT) (JLC), 2022 WL 17728033, at *11 (S.D.N.Y. Dec. 16, 2022) (same); Antonio v. SipSak Inc., No. 21 Civ. 1871 (LGS) (SLC), 2022 WL 4796956, at *15 (S.D.N.Y July 28, 2022) (same), adopted in relevant part by, 2022 WL 4787739 (S.D.N.Y. Oct. 3, 2022); Tarax v. Blossom West Inc., No. 19 Civ. 6228 (JSR), 2022 WL 2132749, at *2 (S.D.N.Y. June 14, 2022).

47

Sojo has been practicing law for approximately five years.  (ECF Nos. 160 ¶ 75(b); 160-1 ¶ 15(b)).  Given this level of experience, other courts in this District have recently awarded Sojo an hourly rate of $225.  See Pinzon, 2023 WL 5337617, at *14 (collecting cases).  Accordingly, the Court awards Sojo an hourly rate of $225, which is consistent with her level of experience and the rates awarded in this District.

Palermo is an associate at the Firm who has been practicing law for less than five years, and litigating wage-and-hour cases for less than two.  (ECF Nos. 160 ¶ 75(c); 160-1 ¶ 15(c)).  Similarly, Ansari graduated from law school in 2020 and has been working at the Firm for less than two years.  (ECF Nos. 160 ¶ 75(d); 160-1 ¶ 15(d)).  Courts in this District "typically award rates in the range of $125–$215 to associates with three years of experience or less."  Rios v. Louya Corp., No. 14 Civ. 6800 (GHW), 2015 WL 5918194, at *4 (S.D.N.Y. Oct. 8, 2015).  Based on their years of graduation from law school and shorter experience working on wage-and-hour cases, the Court awards Palermo and Ansari an hourly rate of $150, which is consistent with their level of experience and rates awarded in this District.  See Mahoney v. Amekk Corp., No. 14 Civ. 4131 (ENV) (VMS), 2016 WL 6585810, at *20 (E.D.N.Y. Sept. 30, 2016) (awarding $150 hourly rate to associate attorney admitted to the bar for two years), adopted by, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016); Black v. Nunwood, Inc., No. 13 Civ. 7207 (GHW), 2015 WL 1958917, at *6 (S.D.N.Y. Apr. 30, 2015) (awarding $150 hourly rate to associate attorney with one year of experience in wage-and-hour cases); Jemine v. Dennis, 901 F. Supp. 2d 365, 393 (E.D.N.Y. 2012) (reducing hourly rate to $150 for junior associate with less than one year of experience).

For paralegals, hourly rates of $100 to $150 are typical for awards in this District. See, e.g., Inga, 2021 WL 3624666, at *14 (collecting cases); accord Pinzon, 2023 WL 5337617, at *14

48

(approving paralegal rate of $125 in FLSA case).  Accordingly, the Court finds that the requested hourly rate of $125 is reasonable, and respectfully recommends awarding fees for paralegal work at that rate.

### 2. Reasonable Hours Expended

Sojo expended 3.1 hours on this action, Palermo 0.2 hours, Ansari 9.18 hours, and the paralegals 9.5 hours.  (ECF Nos. 160 ¶ 73; 160-1 ¶ 12; 160-4).  To determine the reasonable number of hours required by a case, the critical inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).  Courts must perform "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994) (per curiam).  "If the Court finds that some of the claimed hours are 'excessive, redundant or otherwise unnecessary,' it may reduce the number of reasonable hours accordingly."  Agureyev, 2021 WL 847977, at *11 (quoting Hensley, 461 U.S. at 434 (1983)).

The Court has examined the Firm's contemporaneous billing records for this action, including the hours expended, dates of work, and brief descriptions of the work that Sojo, Palermo, Ansari, and the paralegals performed.  (ECF No. 160-4).  The Court finds that the hours they each expended were reasonable and not "excessive, redundant, or otherwise unnecessary."  Hensley, 461 U.S. at 434.

Accordingly, the Court respectfully recommends that Plaintiffs be awarded attorneys' fees in the amount below:

49

| Timekeeper | Requested Rate | Awarded Rate | Reasonable Hours | Fees Awarded |
|---|---|---|---|---|
| Faillace | $300 & $450 | $0 | 0 | $0.00 |
| Sojo | $300 | $225 | 3.1 | $697.50 |
| Palermo | $350 | $150 | 0.2 | $30.00 |
| Ansari | $300 | $150 | 9.18 | $1,377.00 |
| Paralegals | $125 | $125 | 9.5 | $1,187.50 |
| **Total** | | | | **$3,292.00** |

### F. Costs

Plaintiffs request costs in the amount of $2,367.60, comprised of the court filing fee ($400.00) and service costs ($1,967.60). (ECF Nos. 160 ¶ 74; 160-1 ¶ 14; 160-4 at 6-22). An employee who prevails in a wage-and-hour action is entitled to recover costs. See 29 U.S.C. § 216(b); NYLL § 663(1). Recoverable costs are "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).

Plaintiffs have submitted contemporaneous receipts for the service costs. (ECF No. 160-4 at 6–22). In addition, the Court may take judicial notice of the filing fee reflected on the docket as support for an award of that cost. (ECF No. 1). See Inga, 2021 WL 3624666, at *15 (collecting cases). Because Plaintiffs have adequately substantiated their request for costs, the Court respectfully recommends that Plaintiffs be awarded costs in the full amount requested, $2,367.60.

### G. Additional Damages

Plaintiffs also request that the judgment provide that "[i]f any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of the

judgment [] automatically increase by fifteen percent (15%), as required by NYLL § 198(4)."
(ECF No. 160 ¶ 101; <u>see</u> ECF No. 1 at 31).  Plaintiffs' request is in accordance with the NYLL, and
the Court therefore respectfully recommends that the request be GRANTED.  <u>See</u> <u>Victor</u>, 2022
WL 3656312, at *16.

### H.  Claims Against Bawa

As noted above, Plaintiffs have agreed to "dismiss all claims against [] Bawa."  (ECF No.
176).  Accordingly, the Court respectfully recommends that Plaintiffs' claims against Bawa be
DISMISSED WITH PREJUDICE.

### IV. <u>CONCLUSION</u>

For the reasons set forth above, the Court respectfully recommends that a default
judgment against the Defaulting Defendants and in favor of Plaintiffs be entered as follows:

1.  Maldonado be awarded:

    a.  Compensatory damages in the amount of $34,884.46, consisting of $32,440.11
        in Straight Time Wages, $234.35 in spread-of-hours wages, and $2,210.00 for
        tools of the trade purchases;

    b.  Liquidated damages in the amount of $32,674.46;

    c.  Pre-judgment interest on Maldonado's Straight Time Wages ($32,440.11) and
        spread-of-hours wages ($234.35), together, $32,674.46, at a rate of nine
        percent per year from February 4, 2020 through the date of entry of judgment;
        and

    d.  Post-judgment interest pursuant to 28 U.S.C. § 1961.

2.  C. Saldaña be awarded:

    a.  Compensatory damages in the amount of $44,640.00, consisting of $14,725.00
        in Straight Time Wages, $25,993.61 in overtime damages, and $3,921.39 in
        spread-of-hours damages;

    b.  Liquidated damages in the amount of $44,640.00;

      c.  Pre-judgment interest on his Straight Time Wages ($14,725.00), overtime damages ($25,993.61), and spread-of-hours damages ($3,921.39), together, $44,640.00, at a rate of nine percent per year from May 2, 2020 to the date of entry of judgment; and

      d.  Post-judgment interest pursuant to 28 U.S.C. § 1961.

3. V. Saldaña be awarded:

      a.  Compensatory damages in the amount of $127,574.67, consisting of $74,031.90 in Straight Time Wages, $46,907.06 in overtime damages, $4,695.71 in spread-of-hours damages, and $1,940.00 for tools of the trade purchases;

      b.  Liquidated damages in the amount of $125,634.67;

      c.  Pre-judgment interest on his Straight Time Wages ($74,031.90), overtime damages ($46,907.06), and spread-of-hours damages ($4,695.71), together, $125,634.67, at a rate of nine percent per year from March 7, 2018 through the date of entry of judgment; and

      d.  Post-judgment interest pursuant to 28 U.S.C. § 1961.

4. Plaintiffs be awarded attorneys' fees in the amount of $3,292.00.

5. Plaintiffs be awarded costs in the amount of $2,367.60.

6. Pursuant to NYLL § 198(4), an automatic increase of judgment be applied to damages awarded under the NYLL that remain unpaid upon the expiration of 90 days following issuance of judgment, or 90 days after expiration of the time to appeal, and no appeal is then pending, whichever is later; and

7. Plaintiffs' claims for statutory damages under the WTPA be DISMISSED WITH PREJUDICE for lack of standing.

In addition, the Court respectfully recommends that (i) Plaintiffs' claims against Defendant Bawa be DISMISSED WITH PREJUDICE, and (ii) the Clerk of the Court be directed to vacate the certificate of default (ECF No. 88) and default judgment (ECF No. 131) as to Aangan LLC.

Plaintiffs shall serve a copy of this Report and Recommendation on the Defaulting

Defendants and, by **July 24, 2024**, file proof of service on the docket.

Dated:        New York, New York
              July 22, 2024

SO ORDERED.

**SARAH L. CAVE**
**United States Magistrate Judge**

53

\*                           \*                           \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b). Any request for an extension of time for filing objections must be addressed to Judge Clarke.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).